Argued February 28, reversed March 13, 1928.

# MRS. GEORGE PETERSON *v.* GEORGE L. CLEAVER ET AL.

(265 Pac. 428.)

**Malicious Prosecution—Action may be Maintained by One Whose Premises were Searched Pursuant to Warrant Obtained Maliciously and Without Probable Cause.**

1. An action for malicious prosecution may be maintained by one whose premises have been searched pursuant to a warrant obtained maliciously and without probable cause.

**Malicious Prosecution—Elements Comprising Cause of Action for Malicious Prosecution are That Prosecution 'was Commenced Against Plaintiff by Defendant, Actuated by Malice, Terminated Favorably to Plaintiff, and was Instituted Without Probable Cause.**

2. The five elements comprising cause of action for malicious prosecution are, first, that a prosecution was commenced against plaintiff; second, that it was instituted or instigated by defendant; third, that the prosecutor was actuated by malice; fourth, that the prosecution has been finally terminated in plaintiff's favor; and, fifth, that it was instituted without probable cause.

**Malicious Prosecution—Complaint Alleging Prohibition Commissioner, With Design to Harass and Annoy Plaintiff, Wilfully and Wantonly Caused Search-warrant to be Filed and Commissioner's Agents to Execute it by Forcibly Entering Plaintiff's Home, Stated Requisite Malice (Or. L., § 2396).**

3. Complaint alleging that prohibition commissioner designedly and with intent to harass and annoy plaintiff and with wilful, wanton and reckless disregard of plaintiff's rights and feelings and without probable cause caused an affidavit for a search-warrant to be filed, and that such commissioner directed and caused his agents to execute said search-warrant by forcibly entering plaintiff's home, *held* to allege the malice requisite for malicious prosecution defined by Section 2396, Or. L.

---

1. Liability under search-warrant for malicious prosecution, see note in 101 Am. St. Rep. 333; 39 L. R. A. (N. S.) 205. See, also, 24 R. C. L. 726. Issuance of search-warrant as malicious prosecution, see notes in 1 Ann. Cas. 996; 10 Ann. Cas. 372. Civil liability for improper issuance of search-warrant, see note in 45 A. L. R. 605.

2. What necessary to support action for malicious prosecution, see notes in 12 Am. Dec. 265; 26 Am. St. Rep. 127. See, also, 18 R. C. L. 18 et seq.

**Pleading—Demurrer Submits Only Proposition of Law.**

4. Demurrer raises no question of fact but its sole function is to submit proposition of law.

**Malicious Prosecution—That Prohibition Commissioner Did not Sign Affidavit for Search-warrant and Personally Serve Same Held not to Relieve Him from Liability for Malicious Prosecution.**

5. Mere fact that prohibition commissioner did not sign affidavit for search-warrant and personally serve same *held* not to relieve him from liability therefor, if he directed and caused his agents to do so, it not being necessary that defendant should have taken direct part in order to make him liable for malicious prosecution if he has set the machinery of the law in motion.

**Officers—Generally, Public Officer is not Liable for Acts of Subordinate Unless Superior Directs Doing of Act or Personally Co-operates in Act from Which Injury Results.**

6. As a general rule, a public officer is not liable for the acts of a subordinate, whether appointed by him or not, unless the superior directs the act complained of to be done, or personally co-operates in the wrongful act from which the injury results.

**Malicious Prosecution—Statute Creating Office of Prohibition Commissioner Does not Confer Discretionary Powers, as Regards Liability for Malicious Search (Laws 1923, p. 68).**

7. Laws of 1923, page 68, creating the office of prohibition commissioner, does not confer upon the incumbent of such office discretionary or judicial powers, as regards liability for maliciously causing plaintiff's premises to be searched.

**States—Prohibition Commissioner's Acts in Causing Issuance and Execution of Search-warrant Held Done Virtute Officii, Making Bondsman Liable (Or. L., § 348; Laws 1923, p. 68).**

8. Prohibition commissioner's alleged malicious acts in causing affidavit for search-warrant to be filed, warrant issued and search thereunder of plaintiff's home made, *held* acts done *virtute officii*, so as to render bondsman on bond executed pursuant to Laws of 1923, page 68, liable, under Section 348, Or. L., relative to liability on bonds.

**Malicious Prosecution—Malicious Prosecution Actions are not Favorites of Law.**

9. It is a well-recognized rule that actions for malicious prosecution are not favorites of the law.

4. See 21 R. C. L. 504.

5. Liability of principal where agent institutes malicious prosecution, see notes in 1 Ann. Cas. 723; 8 Ann. Cas. 327; Ann. Cas. 1914B, 637. See, also, 18 R. C. L. 65.

6. Liability of public officer for acts of subordinate, see note in 12 Ann. Cas. 185. See, also, 22 R. C. L. 487.

8. See 22 R. C. L. 506.

9. See 18 R. C. L. 11.

Intoxicating Liquors—Malicious Prosecution—Complaint, in Action Against Prohibition Commissioner for Raiding Plaintiff's Home, Stated Cause of Action in Trespass Though not One of Malicious Prosecution.

10. Complaint, in action against prohibition commissioner for raiding plaintiff's home, where no arrest followed raid nor was any charge ever made in court, *held* to state cause of action in trespass, though not one of malicious prosecution.

Judicial, 34 C. J., p. 1180, n. 74.
Malice, 38 C. J., p. 349, n. 64.
Malicious Prosecution, 38 C. J., p. 385, n. 55, p. 387, n. 70, 77, p. 396, n. 94 New, 2, p. 460, n. 99, p. 466, n. 48.
Officers, 29 Cyc., p. 1456, n. 1.
Pleading, 31 Cyc., p. 333, n. 76.

From Multnomah: WALTER H. EVANS, Judge.

Department 1.

Plaintiff sues for malicious prosecution; the complaint states two causes of action. The questions presented to us arise upon a demurrer to the complaint, founded upon the contention that it fails to state a cause of action. The lower court sustained the demurrer; plaintiff appeals.

After alleging that the defendant George L. Cleaver is the prohibition commissioner of the State of Oregon, and that the defendant Fidelity & Deposit Company of Maryland executed his surety bond, the complaint charges that on the twenty-fourth day of December, 1923, Cleaver "acting under color of his office and as such prohibition commissioner, with design and intent to harass and annoy this plaintiff and with wilful, wanton and reckless disregard of the feelings and rights of this plaintiff, did without probable cause therefor, cause an affidavit to be filed in the District Court of the State of Oregon for Multnomah County," averring that there was in the home of the plaintiff a quantity of intoxicating liquors, to wit, whisky, and prayed for a search-

warrant. Further it charges that the defendant, Cleaver, procured the search-warrant, and

"That thereafter said defendant as such Prohibition Commissioner, directed and caused certain of his agents and inspectors to execute said search warrant by forcibly entering into the home and residence of this plaintiff, known as No. 367 Vancouver Avenue, in the City of Portland, Oregon; and directed and caused said agents and deputies in the execution thereof to search said home by ransacking and prying into plaintiff's living quarters, furnishings, furniture, equipment, clothing, supplies, private belongings and appurtenances thereunto belonging, and did cause and direct said officers and agents to leave no thing or article in or about said premises without examination and investigation thereof. That said defendant so directed and caused said search to be made on Christmas eve of the year 1923."

The complaint continues to the effect that the proceedings under the search-warrant were terminated in favor of the plaintiff, and sets forth a copy of the return to the effect that no intoxicating liquors were found. It then avers:

"That each and all of the aforesaid acts of said defendant Prohibition Commissioner were done and performed with reckless disregard of the rights of this plaintiff and with malicious intent to harass plaintiff and to invade the privacy of her home and home life. That each and all of the aforesaid acts were done and caused to be done without any probable cause, and with knowledge and means of knowledge on the part of said Prohibition Commissioner of all the aforesaid facts. That this plaintiff did not have any whiskey or other intoxicating liquors on said premises or otherwise."

The complaint alleges damages. The affidavit which constituted the foundation for the search-warrant was not accompanied by a deposition, and re-

cited only "that there is * * in a certain building at No. 367 Vancouver Avenue * * whisky," it related no other circumstances.

The second cause of action alleges substantially the same matter, with the exception that it omits the averments concerning the search-warrant, and in language somewhat amplified, charges that the defendant Cleaver conducted a "raid" upon her premises. Both defendants contend (1) that the complaint fails to charge malice; (2) that under the statutes creating the office of prohibition commissioner the various deputies and inspectors comprising the personnel of his staff are not in fact his agents, and that accordingly he is not responsible for their actions; (3) that he is a *quasi*-judicial officer and hence no liability attaches to his acts. The defendant bonding company, in addition to the foregoing contentions, claims that the complaint fails to disclose that the alleged acts of Cleaver were performed by virtue of his office.                              REVERSED.

For appellant there was a brief and oral argument by *Mr. James H. Ganoe.*

For respondent there was a brief and oral arguments by *Mr. E. A. Baker* and *Mr. Samuel B. Weinstein.*

ROSSMAN, J.—1. The constitutional provisions which safeguard the home against unreasonable searches and seizures are so well known that we need not quote therefrom. This court in harmony with those of other jurisdictions has held that an action for malicious prosecution may be maintained by one whose premises have been searched pursuant

to a warrant obtained maliciously and without probable cause. Thus Chief Justice BURNETT, speaking for this court in *Nally* v. *Richmond,* 105 Or. 462 (209 Pac. 871), said: "It is well supported by authority that to cause a search-warrant to be issued maliciously and without proper cause, is malicious prosecution for which an action will lie." In *Krehbiel* v. *Henkle,* 142 Iowa, 677 (121 N. W. 378), the court said:

"The right of the citizen to security in person and property against wrongful seizures and searches is one which the law has ever zealously safeguarded and has express recognition in our State Constitution. * * That a violation of this right without reasonable ground therefor gives the injured party a right of action is thoroughly well settled."

In *Spangler* v. *Booze,* 103 Va. 276 (49 S. E. 42, 1 Ann. Cas. 995), the court said:

"A learned author, speaking of search warrants, has remarked that 'there is not a description of process known to the law, the execution of which is more distressing to the citizen. Perhaps there is none which exerts such intense feeling in consequence of its humiliating and degrading effects.' Archibald's Cr. Pr. & Pl., Vol. 1, p. 131."

"It would be a reproach to our jurisprudence if such a prosecution could be inaugurated and carried forward maliciously and without probable cause, and the innocent victim have no remedy. We are of opinion that the declaration in judgment states a good cause of action, and that the plaintiff was entitled to a trial on the merits of his cause." This case is annotated.

To similar effect see *Chicago etc. R. R. Co.* v. *Holliday,* 30 Okl. 680 (120 Pac. 927, 39 L. R. A. (N. S.) 205), case well annotated. To the same effect, and

for a further collection of authorities, see Cornelius, Search and Seizure, § 323.

2. The authorities are agreed that the five elements comprising this cause of action are: First, that a prosecution was commenced against the plaintiff; second, that it was instituted or instigated by the defendant; third, that the prosecutor was actuated by malice; fourth, that the prosecution has been finally terminated in the plaintiff's favor, and fifth, that it was instituted without probable cause. See *Chicago etc. R. R. Co.* v. *Holliday, supra.* It is the contention of the defendant that the element of malice is not disclosed by the complaint.

3. Let us first consider whether the complaint alleges that the act was maliciously performed. The complaint avers that the defendant Cleaver "with design and intent to harass and annoy this plaintiff, and with wilful, wanton and reckless disregard of the feelings and rights of this plaintiff did, without probable cause therefor," cause the affidavit for the search-warrant to be filed. Further, that the defendant Cleaver "directed and caused certain of his agents and inspectors to execute said search-warrant by forcibly entering into the home and residence of this plaintiff * * and directed and caused said agents and deputies in the execution thereof to search said home by ransacking and prying into plaintiff's living quarters, furnishings, furniture, equipment, clothing, supplies, private belongings and appurtenances thereunto belonging, and did cause and direct said officers and agents to leave no thing or article in or about said premises without examination and investigation thereof. * * That each and all of the aforesaid acts of said defendant Prohibition Commissioner were

done and performed with reckless disregard of the rights of this plaintiff and with malicious intent to harass plaintiff and to invade the privacy of her home and home life. That each and all of the aforesaid acts were done and caused to be done without any probable cause, and with knowledge and means of knowledge on the part of said Prohibition Commissioner of all the aforesaid facts.''

4. The defendants, instead of challenging the truthfulness of these charges by denying them, have admitted them by interposing a demurrer. The demurrer raises no question of fact; its sole function is to submit the proposition of law, whether an officer who has thus conducted himself is guilty of malice. Section 2396, Or. L., defines the word "malice" thus: "The terms 'malice' and 'maliciously,' when so employed, import a wish to vex, annoy, or injure another person * * " In *Gee* v. *Culver,* 13 Or. 598 (11 Pac. 302), Mr. Justice LORD on behalf of the court, defined quite extensively the component elements of malice; the language there set forth is approved and amplified in *Stamper* v. *Raymond,* 38 Or. 16 (62 Pac. 20), and again in *Roberts* v. *Cohen,* 104 Or. 177 (206 Pac. 295). We are satisfied with what is there set forth and believe that the definitions of malice, previously announced by this court, when applied to the recitals of the complaint, indicate that the defendant Cleaver's actions were actuated by malice.

5. The mere fact that Cleaver did not sign the affidavit applying for a search-warrant, and did not serve the process personally, does not relieve him from liability if he conducted himself as alleged in the complaint. Thus it was said in *Stainer* v. *San Luis Valley Land & Mining Co.,* 166 Fed. 220: "It is

contended that defendant is charged with only having 'caused' the affidavits to be filed and plaintiff to be arrested and prosecuted, and that such allegation is not a sufficient charge that defendant initiated the prosecution and is responsible for its consequences. We think this criticism is without merit. The verb 'to cause' is very comprehensive, and an allegation that a person caused one to be arrested and prosecuted is sufficient, if proved, to hold such person to responsibility therefor." This court but recently in *Knight* v. *Baker,* 117 Or. 492 (244 Pac. 543), held that it is not necessary that the defendant should have taken a direct part to make him liable; it is sufficient if he sets the machinery of the law in motion, or procures the prosecution to be instituted.

6. Carrying this argument further, the defendants contend that Cleaver is accountable only for his personal conduct and not liable for that of other members of his staff. They base their argument largely upon the provisions of the statute which create his office: Session Laws 1923, Chap. 47. The act seems to contemplate that the Governor shall appoint and remove those who comprise the commissioner's staff. As a general rule a public officer is not liable for the acts of a subordinate, whether appointed by him or not, unless the superior directs the act, complained of, to be done, or personally co-operates in the wrongful act from which the injury results: 22 R. C. L., Public Officers, § 166; Throop, Public Officers, § 592. But the complaint seeks to hold the defendants liable, not because a subordinate initiated a wrongful act and carried it through to its completion, but because Cleaver personally conceived the wrong and directed a member of his staff to commit it. We deem it un-

necessary to quote from the portions of the complaint which substantiate this conclusion. Throughout, it charges that it was Cleaver who designed the act, directed it to be done, and caused it to be done. A limitation to the rule, giving the public officer immunity from liability for the acts of his subordinates, is thus expressed in a comprehensive footnote to the case of *Casey* v. *Scott*, 12 Ann. Cas. 184: "Unless such officer directs the act complained of to be done, or personally co-operates in the negligence from which the injury results."

7. The defendants contend that Cleaver was acting in a semi-judicial capacity, and that hence no liability attaches to his acts. The most commonly accepted definition of a *quasi*-judicial officer is that set forth in Bishop on Non-Contract Law, §§ 785, 786: "*Quasi*-judicial functions are those which lie midway between the judicial and the ministerial ones. The lines, separating them from such as are on their two sides, are necessarily indistinct; but, in general terms, when the law, in words or by implication, commits to any officer the duty of looking into facts, and acting upon them, not in a way which it specifically directs, but after a discretion in its nature judicial, the function is termed *quasi*-judicial." The duties of the prohibition commissioner, as defined in 1923 Session Laws, Chapter 48, are:

"Said prohibition commissioner and agents and inspectors appointed under this section shall have the authority of peace officers within the state of Oregon * * It shall be the duty of such commissioner and all agents and inspectors appointed under this act to diligently enforce the laws of this state having to do with the prohibition of the liquor traffic within the state of Oregon. * * Upon securing evidence of vio-

lation of any of said laws, said commissioner or any of said inspectors or agents shall make or cause to be made complaints against violators.''

Then follows a provision giving these officers power to make arrests and the right to ''go armed as permitted by law in the case of Sheriffs.'' We fail to find anything in this act which confers upon the commissioner discretionary or judicial powers. Every servant, employee, deputy, assistant clerk, stenographer, bookkeeper, etc., is required to use some judgment in the discharge of his daily tasks, but this does not convert the entire mass of mankind into judicial and *quasi*-judicial officers. A sheriff is a peace officer. The duties required of his office are in some instances judicial, in others ministerial. For a failure to discharge the former properly, he is not liable; while a wrongful discharge of the latter may involve him in liability: *South* v. *State of Maryland,* 18 How. (U. S.) 396 (15 L. Ed. 433, see, also, Rose's U. S. Notes). A reading of the excellent decision in the latter case written by Mr. Justice GRIER should be sufficient to convince one that the act alleged in the complaint was not *quasi* judicial. The state has provided as advisers of the commissioner an attorney general and numerous district attorneys; it has also set up many justice of the peace courts throughout the state, together with Circuit Courts and a Supreme Court. It is the duty of the commissioner and his staff to secure the evidence and make the arrest; the discretionary and judicial functions are vested in the Attorney General, district attorneys and courts. We believe that this case is readily distinguishable from *Watts* v. *Gerking,* 111 Or. 641 (222 Pac. 318, 228 Pac. 135), wherein this court held that a district attorney is possessed of *quasi*-judicial powers.

We are left with the problem, Is the bonding company liable upon its bond? The act provides that the commissioner shall furnish a bond; "said bond shall be conditioned upon the faithful performance of official duties." The bond executed by the defendants stipulates: "The condition of this bond is such that if the said G. L. Cleaver, principal, shall at all times hereafter, so long as he shall continue in said office faithfully perform the official duties of his office * * then this obligation shall be void; otherwise to be and remain in full force and effect." Section 348, Or. L., provides: "The official undertaking or other security of a public officer to the state * * shall be deemed a security to the state, or * * to all persons severally for the official delinquencies, against which it is intended to provide." In *Lee* v. *Charmley,* 20 N. D. 570 (129 N. W. 448, 33 L. R. A. (N. S.) 275), we find:

"The courts in their consideration of those acts of public officers which result in liability to the sureties upon their official bonds have found it convenient to divide such actions into three distinct classes: (1) Acts done by virtue of office; (2) acts done under color of office; and (3) acts done in a purely private or individual capacity. By an absolute agreement of authority, the sureties upon an official bond are liable for wrongful acts within the first class, and are not liable for those of the third class. Regarding those acts falling within the second class, there has been for generations an irreconcilable conflict of authority."

In *Feller* v. *Gates,* 40 Or. 543 (67 Pac. 416, 91 Am. St. Rep. 492, 56 L. R. A. 630), this court pointed out the distinction between "acts done *virtute officii*" and "acts done *colore officii.*"

"The distinction is this: acts done *virtute officii* are where they are within the authority of the officer,

but in doing it he exercises that authority improperly, or abuses the confidence which the law reposes in him, whilst acts .done *colore officii* are where they are of such a nature that his office gives him no authority to do them.''

8. The endeavor to classify the acts committed has led to many fine distinctions. Many courts have rid themselves of this problem and the difficulties attendant upon the statement of the distinction by holding the surety liable for acts performed under color of his office, as well as for those done by virtue of his office. Indeed, 22 R. C. L., Public Officers, Section 190, states that the weight of authority holds the surety liable in either instance. A well-considered case is *Lee* v. *Charmley, supra, Greinberg* v. *People,* 225 Ill. 177 (80 N. E. 100, 116 Am. St. Rep. 127, 8 L. R. A. (N. S.) 1223), is also worthy of reading. We believe that even if the distinction should be retained, the acts charged were done by *virtute officii.*

9. We are aware of the well-recognized rule that actions for malicious prosecution are not favorites of the law. But the security of the home against wrongful invasions is even more thoroughly embedded in our scheme of jurisprudence. The constitutional provision which guarantees the home against unreasonable searches and seizure, together with a few similar provisions found in the bill of rights, constitutes the very woof and warp of our jurisprudence. When a public servant is charged with a violation of such a provision and the accusation is made that he committed his act maliciously, the complaint deserves a trial. If the charge is not substantiated in fact the action will, of course, be dismissed.

10. The second cause of action cannot be considered as one of malicious prosecution because no prosecution attended it. The complaint denominates it as a "raid." No arrest followed the raid; no charge was ever made in court. At best the second cause of action alleges a mere trespass. However, it states a cause of action.

It follows from the foregoing that the lower court erred when it sustained a demurrer to the complaint. Its order in so holding is reversed and it is instructed to proceed with the action in a manner not inconsistent with the foregoing.    REVERSED.

RAND, C. J., and COSHOW and McBRIDE, JJ., concur.