Argued April 15; reversed June 2, 1942

# ALLISTER *v.* KNAUPP ET AL.

(126 P. (2d) 317)

Before KELLY, Chief Justice, and BAILEY, LUSK, RAND, ROSSMAN and BRAND, Associate Justices.

*W. C. Winslow,* of Salem (Norman K. Winslow, of Salem, on the brief), for appellant.

*Ralph R. Bailey,* of Portland (Maguire, Shields & Morrison and Hugh L. Biggs, all of Portland, on the brief), for respondent.

BAILEY, J. The plaintiff, Fay Allister, has appealed from a judgment in favor of the defendant Paul W. Knaupp, entered by the court notwithstanding the verdict, in accordance with chapter 309, Oregon Laws 1941. The action was instituted by the plaintiff against Knaupp and Tom Steenson as defendants, to recover damages for personal injuries suffered by the plaintiff in a collision between Steenson's automobile, in which he was riding as a passenger, and one driven by Knaupp. At the conclusion of the evidence the court directed a verdict in favor of the defendant Steenson. The defendant Knaupp moved for a directed verdict and the court expressed its view that his motion should be granted, but stated that at the request of the plaintiff it would submit to the jury the case against Knaupp, reserving to him "the right to move for judgment" in his favor in the event of the jury's returning a verdict for the plaintiff. The jury rendered a verdict in favor of the plaintiff for $3,800 general and $150 special damages. No appeal is taken from the judgment in favor of Steenson.

The principal question here to be determined is whether there is any substantial evidence that the plaintiff was induced by false and fraudulent representations to execute a document releasing and discharging Knaupp from liability. The release, on a printed form furnished by Knaupp's agent, is as follows:

"For the sole consideration of two hundred and no/100 dollars, the receipt and sufficiency whereof is hereby acknowledged, the undersigned hereby release

and forever discharge Paul W. Knaupp, his heirs, executors, administrators, agents and assigns, and all other persons, firms or corporations liable, or who might be claimed to be liable, none of whom admit any liability to the undersigned but all expressly deny any liability from any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever, and particularly on account of all injuries, known and unknown, both to person or property, which have resulted or may, in the future, develop from an accident which occurred on or about the 16th day of April, 1940, at or near Canby, Ore.

"Undersigned hereby declare that the terms of this settlement have been completely read and are fully understood and voluntarily accepted for the purpose of making a full and final compromise adjustment and settlement of any and all claims, disputed or otherwise, on account of the injuries and damages above mentioned.

"In witness whereof, I have hereunto set my hand and seal this 29 day of April, 1940.

"FAY LEON ALLISTER   (Seal)

In presence of

"JIMMIE ALLISTER
"STANLEY J. MITCHELL".

The answer of the defendant Knaupp, after denying generally the allegations of the complaint, pleaded the above-quoted release as in full settlement of any claim of the plaintiff against him. The plaintiff in his reply thereto admitted the execution of the purported release, and further alleged that Knaupp's representative, in order to induce the plaintiff to sign that document, falsely and fraudulently represented to the plaintiff that he had investigated the accident in which the plaintiff was injured; that his investigation disclosed that Knaupp was not guilty of any negligence causing

or tending to cause the accident; that Knaupp was not liable to the plaintiff in any way on account of such accident; that the accident had been caused solely by the negligence of Steenson, in his failure to signal that he would slow down and make a left-hand turn; and that the plaintiff's signing the document would not affect his right of action against Steenson.

The reply further alleged that the representations made by Knaupp's agent were false and fraudulent in that Knaupp at the time of the collision was "asleep at the wheel of his car" and the failure of Steenson to signal "would not and could not influence the driving of the said defendant Knaupp at said time"; that the document which the plaintiff signed was a complete release and not merely a covenant not to sue Knaupp; that such release was obtained to be used as a complete release not only by Knaupp but also by Steenson; that such representations were known to Knaupp's agent to be false and fraudulent and were made for the purpose of having the plaintiff rely upon them; that the plaintiff did rely thereon; and that in reliance thereon the plaintiff executed the document referred to as a release, and was thereby damaged.

The collision occurred in the afternoon of April 16, 1940, at Canby, Oregon. Steenson, a deputy sheriff of Clackamas county, was returning from Dallas with the plaintiff in his custody for the purpose of taking him before a justice of the peace at Canby. Steenson's car had reached an intersection in the Pacific highway and was about to turn to the left, toward the business district of the town, when it was struck at the rear by a car which Knaupp was driving. As a result, the plaintiff received the injuries which are the basis of this action.

The plaintiff testified that Steenson had slowed his car down to ten or fifteen miles an hour and was starting to make the turn, without, however, giving any signal, when the collision occurred. Immediately after the accident the plaintiff was turned over by Steenson to a state police officer, who took him to the justice of the peace at Canby. Steenson then went back and interviewed Knaupp, who admitted to him, according to the testimony of both Steenson and Knaupp, that he had momentarily gone to sleep and was asleep at the time of the impact, and that he had not seen Steenson's automobile ahead of his car.

A little later, during the same day, Steenson took the plaintiff to Oregon City and placed him in the county jail. The plaintiff testified that on that trip he told Steenson that he had not given a signal, and blamed Steenson for the accident. He further stated that Steenson told him that he should have arrested Knaupp but for the fact that, "I never stuck out my hand." The plaintiff was under the impression, he testified, that Knaupp's car was traveling at a very high speed at the time of the collision.

Steenson testified that he did not remember telling the plaintiff on the way to Oregon City or at any other time what Knaupp had told him about being asleep or that Knaupp had agreed to pay for the damage to Steenson's car. He did not deny that the plaintiff called his attention to the fact that he had not given a signal, although he did deny that he made the statement to Allister that he should have arrested Knaupp except for his own failure to signal.

Shortly after the accident Knaupp made a report of the collision to the company carrying insurance on his automobile and stated in that report that he was

momentarily asleep when the accident occurred and did not see Steenson's car.

Allister remained in the county jail seven days. On the day following his discharge therefrom he went to the office of Stanley J. Mitchell, an attorney of Oregon City, told Mitchell of the accident and gave his version of it as due to Steenson's failure to signal. Allister was in need of medical and hospital care. He was told by Mitchell, he testified, that he could release the driver of one of the cars involved in the collision "and get my doctor's bills and hospital bills paid, and then I could sue the one that was to blame for the accident."

The plaintiff then entered an Oregon City hospital and there remained eight days. On leaving the hospital he again went to Mitchell's office. Mitchell had meanwhile telephoned to Hudson R. Church, the adjuster for the company insuring Knaupp, and Church, on the day of receiving that call, came to Oregon City from Portland and had a conference with Mitchell in regard to the accident, but no settlement was then made.

When the plaintiff made his second call at Mitchell's office he was accompanied by his brother, Jimmie Allister. At the suggestion of Mitchell and with the assent of the plaintiff, Mitchell again telephoned Church and told him that the plaintiff was desirous of effecting a compromise with Knaupp. Church came to Oregon City during the same day. Before his arrival, however, Mitchell and the plaintiff discussed the question of settling with one of the drivers involved in the collision and bringing an action against the other. The plaintiff told Mitchell that he wanted to take such a course and Mitchell advised him that he could do so.

Upon Church's arrival in Oregon City a conference was held in Mitchell's office by Church, Mitchell,

the plaintiff and his brother Jimmie. According to the plaintiff's testimony, Church told him that he had investigated the case and found that the accident was not due to Knaupp's fault but was caused by Steenson's failure to give a signal. The plaintiff had told Church, he testified, that he knew that Steenson had not signaled. Asked what Mitchell said about the accident, during the conference, the plaintiff answered: "Oh, he was just mostly sitting there listening to this guy. I don't think he knew a lot about how it happened." On being questioned further about Church's statements, the plaintiff gave the following testimony:

"Q. In that conversation, did Church point out wherein the deputy sheriff [Steenson] was to blame for the accident?

"A. Yes. He said he didn't give no signal, he slowed up too quick.

"Q. Now, did you believe those representations, Mr. Allister?

"A. Yes. I believed them.

"Q. Did you rely upon them in signing that release?

"A. I did."

The plaintiff also stated that he did not know, at the time of the conference, about Knaupp's having been asleep at the time his car ran into Steenson's, and that Church said nothing about it.

Concerning the settlement, the plaintiff testified that Church offered to give him $200; that he agreed to accept that sum; and that at the time it seemed satisfactory to him. The amount of the settlement accordingly agreed upon, $200, was paid by Church to the plaintiff in two checks, one for $125 and the other for $75, the latter to be used in paying $25 to the doctor attending Allister, $25 to the hospital and $25 to Mitchell as attorney's fee.

When the release was given to the plaintiff to sign he read it over and said that he was able to understand it. His education, as shown by his testimony, had not been continued beyond the fifth grade in school. After reading the document he remarked that it sounded to him as though it released everybody connected with the accident. He was assured by Church that he would still have a right to sue Steenson and that the $200 then paid him would be deducted from whatever amount he might recover against Steenson. The plaintiff handed the paper to Mitchell, he testified, and, "I asked would that keep me from suing the deputy sheriff [Steenson], and he said, 'No.' " He also inquired of Mitchell whether he should sign the release and Mitchell advised him to sign it. In this connection, the plaintiff testified as follows:

"Q. He [Mitchell] said it was all right. And you were acting on his advice, then, when you did it; is that right?

"A. Well, I was believing what the adjuster said and I was believing what he said.

"Q. Well, you were checking that with your attorney, weren't you?

"A. What?

"Q. Whatever the adjuster said you were checking with your attorney, were you not?

"A. Yes.

"Q. When the attorney said it was O. K., then you felt free to sign it; isn't that right?

"A. Yes."

At the time that the plaintiff asked whether signing the release would preclude him from suing Steenson, Mitchell, according to the plaintiff's testimony, in the presence of Church gave him one of his professional cards after writing on it the name of a Salem attor-

ney, and suggested that Allister consult that attorney about suing Steenson.

Jimmie Allister testified that he was present at the time the release was signed and that Church stated that he had investigated the case and found that Knaupp was not at fault, and that the collision was caused by the negligence of Steenson.

Church, as a witness for the defendant Knaupp, testified that he had been for three years an adjuster for the company insuring Knaupp, and for five years prior to that employment had been an adjuster for another insurance company. Before Mitchell first telephoned him, Knaupp's report had been filed in the insurance company's Portland office and then referred to the company's Berkeley, California, office, and had not come to his attention.

In their first conference, Mitchell represented to him, Church testified, that he had made his own investigation "and was perfectly satisfied that Mr. Knaupp was responsible for the accident; that his conduct in driving the car was the cause of the accident." Church further stated that his investigation revealed that Knaupp was responsible for the accident; that he did not at any time deny Knaupp's responsibility; and that to his best recollection Mitchell did not inquire of him "as to the facts of the accident". Upon being asked whether he had admitted Knaupp's responsibility in his conversation with those present at the time the settlement was made, he answered: "Oh, I don't think that I would come right out and assume responsibility. My representations or, rather, my discussion and interest in that matter, they would more or less assume that there was some responsibility there. It is not human nature to go right out and assume responsibility."

The release which Church presented and Allister signed stated that Allister released Knaupp and all others who might be claimed to be liable, ''none of whom admit any liability to the undersigned but all expressly deny any liability from any and all claims, demands, damages, actions, causes of action or suits of any kind or nature''.

Church denied that there was any discussion when the plaintiff was present about the plaintiff's still having a right to bring an action against Steenson. He stated that the amount of the settlement was based upon the report of the physician attending Allister as to the extent of Allister's injuries.

Mitchell also was called as a witness by the defendant Knaupp. His memory of what had been said and done was not especially clear. He did admit that Allister had discussed with him, before their conference with Church, his desire to release only one of the drivers involved in the collision and bring an action against the other, and that he had advised Allister that that could be done. Mitchell testified that he had made an investigation of the accident and in that connection had interviewed Steenson, who said that ''Knaupp told him in words to the effect that he had gone to sleep on the job, or something of that nature''; and that he, Mitchell, had reached the conclusion ''that Knaupp was responsible for it''. During his negotiations with Church, he stated, there was never ''any conversation or argument between'' them ''over the question of liability''. He did not testify, however, that he told the plaintiff what he had learned in regard to Knaupp's liability either from his own investigation or from his conference with Church.

He first stated that at the time of the settlement with Church the question of the plaintiff's effecting

a compromise with Knaupp and later suing Steenson was abandoned or disregarded, and that it was his impression that the settlement made at that time was to cover in full all the damages to which the plaintiff was entitled.

In regard to his card, with the name of a Salem attorney written on it, Mitchell first testified that prior to Church's arrival in Oregon City for the conference, he handed it to Allister and suggested that before making any settlement he consult the attorney thereon named, inasmuch as Allister appeared dissatisfied with his services. Mitchell's attention was then directed to two letters that he had written to a firm of Salem attorneys, one of whom was named on the card. In the first letter, dated May 3, 1940, four days after the signing of the release, Mitchell wrote:

"I presume Mr. Allister has informed you all of the necessary facts including the fact that settlement has been had with one of the defendants.

\* \* \*

"From the foregoing facts, you will note that I can no longer represent Mr. Allister and I have explained the matter to him, and I hope that you will be successful in pressing the claim."

In the second letter, written June 20 of the same year, appears this statement: "It was the express intention at the time this settlement was made that the release would appertain only as to the State Farm Mutual", the insurance company represented by Church as adjuster.

After reading the letter first above quoted, Mitchell stated that he did not know whether a discussion was had at the conference about releasing Knaupp and reserving the right to proceed against Steenson, but

that it was his impression that the matter was mentioned. He further stated that at the time of the settlement he did not know the distinction between a release and a covenant not to sue. Concerning the release signed by the plaintiff, he said: "Well, it appeared like a full release to me, and I never—just never gave it a second thought. I never paid much attention to it, to tell you the fact of it."

On the question of whether Church at the time the settlement was consummated made any statement concerning Knaupp's liability, Mitchell on direct examination thus testified:

"Q. Now, I will ask you specifically, Mr. Mitchell, do you recall while you were in the office and while Mr. Church was in the office, do you recall such a statement being made that Mr. Church said he had fully investigated the accident, that Mr. Knaupp was in no way responsible therefor but it was all the other person's fault?

"A. I don't think—to the best of my recollection, I don't remember that statement. It could have been made, but I don't remember it."

When the plaintiff left the hospital at Oregon City he was helped into his car by a nurse, and later was assisted by his brother to walk up to Mitchell's office and back to his car. For three or four months after signing the release he was obliged to use crutches to get about, and for some months thereafter, a cane. Up to the time of the trial in the circuit court, June 24, 1941, some fourteen months after the accident, the plaintiff had been unable to perform any work, and during that entire interval had been continuously under the care of a doctor at Dallas, Oregon.

■ The trial court's allowance of the defendant's motion for judgment notwithstanding the verdict, in

accordance with chapter 309, Oregon Laws 1941, was in effect a deferred ruling on the defendant's motion for a directed verdict. The same questions are here before us that would have been presented, had the court granted the motion for a directed verdict. We must therefore consider the evidence in the record in the light most favorable to the plaintiff. It is not our function to weigh or evaluate the testimony. We are charged with the duty of ascertaining whether there is substantial evidence to support the verdict of the jury.

■ The fraud charged by the plaintiff against Knaupp in inducing him to sign the release consists in (1) the misrepresentation of Church, Knaupp's agent, as to the legal effect of the release, and (2) the misrepresentations of Church as to the facts and circumstances of Knaupp's connection with the collision. The first charge of misrepresentation above mentioned furnishes no ground for setting aside the release. The evidence shows that the accident was not caused by Steenson's negligence. Moreover, when the insurance company's attention was directed to the fact that Allister had not intended to release Steenson, it agreed to return the release to Allister's attorney upon Allister's executing a covenant not to sue Knaupp. That offer was rejected by Allister. Therefore, any reliance that Allister placed on Church's misrepresentation as to the legal effect of his signing the document did not cause damage to him.

The evidence in regard to what was said concerning the effect of the release on the plaintiff's right to sue Steenson is of importance in that it indicates that the settlement with Knaupp was not intended by Allister as in full for the injuries which he had suffered. It tends also to refute the contention of Knaupp that the

amount of the settlement was determined by the extent of Allister's injuries as shown by the report of his physician. In this latter connection we must bear in mind the evidence of Mitchell's recommending to Allister that he consult a member of a firm of Salem attorneys in regard to bringing an action against Steenson, the letters written by Mitchell to the same firm of Salem attorneys, and the fact that Allister did consult those attorneys within three days after his settlement with Knaupp.

■ The representation made by Church as to whose negligence caused the accident was more than the expression of an opinion. Church stated, according to Allister, that Steenson had "slowed up too quick" and not signaled, and that the accident was caused by such negligence of Steenson. Church also said, Allister testified, that he had investigated the case and found that the accident was not due to any fault of Knaupp.

In *Olston v. Oregon Water Power & Ry. Co.*, 52 Or. 343, 355, 96 P. 1095, 97 P. 538, 20 L. R. A. (N. S.) 915, this court said:

"Although the matter alleged and offered in proof as constituting the fraud is largely a matter of opinion, yet sometimes a statement of an opinion is necessarily based upon a fact or carries with it such an inference of fact that it can be interpreted as a statement of fact, and where it is shown to be false and made with intent to deceive, it may be actionable. It is said, in 20 Cyc. 18:

" 'An expression of opinion may be so blended with statements of fact as to become itself a statement of fact. Where one of the parties has superior knowledge on the subject, his expression of an opinion which he knows he does not entertain because it is contrary to the facts may be actionable if made for the purpose of inducing another to act upon it, which he does to his injury.' "

With reference to this same subject, in *Woods v. Wikstrom*, 67 Or. 581, 600, 135 P. 192, the court stated:

"If the defendant represented to the plaintiff, in order to prevail on him to execute the release, that the accident was unavoidable, and that he had no cause of action against him, without believing said representations to be true, and the plaintiff believed said representations, and, so believing, executed the release, such representations constituted fraud and vitiated said release, if the representations were false."

■ Church, according to his own testimony, knew that the accident was caused by Knaupp's falling asleep at the wheel of his car, and that the proximate cause of the collision was not any failure of Steenson to signal. Allister, however, did not know at the time he signed the release that Knaupp's being asleep caused the accident, but believed that it was due at least in part to Steenson's negligence. There was substantial evidence from which the jury might have found that Allister did rely upon Church's representations in executing the release.

The plaintiff consulted Mitchell as his attorney, but did not authorize him to make any settlement or institute proceedings against the drivers, or either of them, of the automobiles involved in the accident. Mitchell testified that he had interviewed Steenson and made an investigation of the cause of the accident, and that he arrived at the conclusion that the collision was caused by Knaupp's being asleep. He did not state what investigation he made other than to consult with Steenson; and he did not, as heretofore mentioned, testify that he communicated to the plaintiff what he had discovered or what he had concluded.

■ It is argued by the defendant Knaupp that the knowledge of Mitchell is to be imputed to Allister,

his client, and that because Mitchell knew all the facts in the case the plaintiff could not have been misled by the representations made by Church as to the cause of the accident. Such an assumption is based on the premise that the jury was bound to accept Mitchell's statements as true. We have already referred to some of Mitchell's testimony. That and his other utterances indicate that his memory, to say the least, was faulty, and that much of his testimony was both contradictory and contradicted. And in addition, his apparent and admitted indifference to his client's interest in making the settlement could not have escaped the jury's notice. It was for the jury to say what weight, if any, should be given Mitchell's testimony, and the verdict rendered clearly states its view.

The defendant argues that even if Mitchell's testimony be entirely disregarded, there still remains the testimony of Steenson, to the effect that he informed Mitchell that Knaupp had told him that he would take care of the damage to Steenson's car, and that, "I told the facts as they occurred there." Steenson did not say when that conversation was had. The record discloses that the present attorney for the plaintiff contacted Steenson before the institution of this action and attempted to find out from him how the accident happened, but Steenson refused to give him any information about it. On the witness stand Steenson exhibited marked antagonism toward the plaintiff's attorney.

In regard to the knowledge of Mitchell the court instructed the jury as follows:

"The knowledge of Mr. Mitchell, who was plaintiff's attorney, as to the facts concerning the original accident, is imputed to and binding upon his client,

Allister. Therefore, if you find that Mr. Mitchell knew the facts concerning the accident and the liability of Knaupp, then you must find for defendant Knaupp on the charge of fraud based upon the alleged statements of Church concerning the lack of fault on the part of Knaupp.

"If you find that Mr. Allister relied on the advice and investigation of his attorney, Mitchell, and not on any statements of Mr. Church, then plaintiff's charges of fraud must fail and your verdict will be in favor of the defendant Knaupp."

These instructions left to the jury, and properly so, the question of Mitchell's knowledge of the facts concerning the liability of Knaupp.

■ Earlier in this opinion we quoted plaintiff's testimony to the effect that the plaintiff signed the release after his attorney told him that it was "O. K." That statement had particular reference to the question of whether the plaintiff would, by signing the release, waive his right to bring an action against Steenson. From all the plaintiff's testimony, it can not be said that he was relying upon his attorney's advice and not upon the statements of Church as to Knaupp's liability.

In relation to the duty of the plaintiff to use ordinary care to ascertain the cause of the accident, the court thus instructed the jury:

"The plaintiff and defendant in this case were dealing at arm's length; that is, there was no fiduciary relation existing between them, or relationship of trust and confidence. It was the duty of plaintiff under the law in dealing with the defendant Knaupp to use his ordinary senses and faculties. In other words, the law required him to use the ordinary care and precaution of men in ordinary walks of life, and if in this case you find from the testimony that the plaintiff per-

sonally or through his attorney was or reasonably should have been as well informed as to the facts of the accident in question as the defendant Knaupp, then in that event the law will not permit the plaintiff to avoid the effect of the release by saying that he relied not upon his information but upon the statements of the adverse party.''

■ It has hereinbefore been noted that immediately after the accident Allister was turned over by Steenson to a state police officer and taken by the latter before the justice of the peace at Canby. He had no opportunity at that time to interview Knaupp or any one else who may have been present at the time and place of the collision. Steenson discussed the accident with Knaupp, but did not divulge to the plaintiff what Knaupp told him. While confined in the jail and the hospital the plaintiff was unable to make any investigation. When he left the hospital he was physically incapacitated to move about without assistance. Moreover, it does not appear that Knaupp, in any interview, would have provided the plaintiff with information refuting the statements made by Church. We can not say as a matter of law that the plaintiff is precluded from a recovery because he relied upon Church's statements without making an investigation as to the truth or falsity thereof, or that he was careless of his own interest: *Bond v. Graf*, 163 Or. 264, 271, 96 P. (2d) 1091; *Leach v. Helm*, 114 Or. 405, 411, 235 P. 687; *Sheffer v. Rudnick*, 291 Mass. 205, 196 N. E. 864; *Whiting v. Price*, 172 Mass. 240, 51 N. E. 1084, 70 Am. St. Rep. 262.

■ The court instructed the jury to subtract from any amount it might award the plaintiff the sum of $20, paid by the defendant to the plaintiff at the time of

signing the release. And we must assume that the jury did so, in reaching its verdict.

In our opinion, there was substantial evidence to support the verdict of the jury, and the circuit court erred in entering a judgment notwithstanding the verdict. The judgment appealed from is therefore reversed and the cause is remanded with instructions to the circuit court to set aside the judgment in favor of Knaupp and enter judgment in favor of the plaintiff in conformance with the verdict of the jury.