Argued April 9, affirmed April 29, 1959

# HILL *v.* CARLSTROM

338 P. 2d 645

*David W. Harper,* of Portland, argued the cause for appellant. With him on the brief were Vergeer & Samuels, of Portland.

*John C. Beatty, Jr.,* of Portland argued the cause for respondent. With him on the brief were Dusenbery, Martin, Schwab, Beatty & Parks, Portland.

Before McALLISTER, Chief Justice, and LUSK, WARNER and MILLARD, Justices.

MILLARD, J. (Pro Tempore)

This is an appeal from an order of the Circuit Court of Multnomah County setting aside a judgment for $9,000 rendered upon a jury verdict and entering a judgment notwithstanding the verdict, and from an order overruling plaintiff's objection to the entire cost bill of defendant, all having to do with an action for malicious prosecution based upon the instigation of insanity proceedings, unsuccessfully brought against the plaintiff.

As and for his first assignment of error plaintiff states that "there were sufficient facts to support a judgment in favor of the plaintiff in this malicious prosecution action." This method of assignment is clearly in violation of Rule 16 of this Court. In fact, it does not point out succinctly and clearly wherein the court is claimed to have erred, as required. From a reading of the briefs and bill of exceptions, we glean, however, that plaintiff claims as error the granting of a judgment notwithstanding the verdict. An examina-

tion discloses that such judgment was allowed on motion of defendant on the grounds that the plaintiff failed to prove lack of probable cause or malice on the part of defendant. Plaintiff contends in his brief that the trial court did not have authority under the statute to grant judgment notwithstanding the verdict on the grounds stated since defendant in a motion for directed verdict did not specify such grounds. However, it appears defendant did move for a directed verdict on the general ground that plaintiff had failed to establish his case. Plaintiff, during the argument here, properly withdrew his second assignment of error raising the same question, and hence this objection is waived. It should also be stated that at the same time, plaintiff withdrew his third assignment of error relating to the failure to grant plaintiff the right to amend his second amended complaint after trial.

Since defendant at the close of the trial did move for a directed verdict on general grounds of plaintiff's failure to establish his case, the same question is presented here as would have been presented by such motion. *Allister v. Knaupp,* 168 Or 630, 642, 643, 126 P2d 317. Incidentally, in that case, as here, the trial court similarly expressed its view that the motion might be granted, but at plaintiff's request would submit the case to the jury, and then if the verdict was incorrect, the question could again be raised by appropriate motion.

■ A motion for judgment notwithstanding the verdict, based upon the same grounds as a motion for a directed verdict, or failure to establish his case, will be sustained if appellant failed to prove any of the material allegations of his complaint. *Jasper v. Wells,* 173 Or 114, 127, 144 P2d 505; *Allister v. Knaupp,* supra.

■■ Generally the essential elements of a cause of action for malicious prosecution are that a prosecution was commenced against the plaintiff by defendant, actuated by malice, terminated favorably to plaintiff, and was instituted without probable cause. *Peterson v. Cleaver,* 124 Or 547, 553, 265 P 428; *Lane v. Ball,* 83 Or 404, 413, 160 P 144, 163 P 975; *Stamper v. Raymond,* 38 Or 16, 62 P 20. We do not find any prior case in this state based upon malicious prosecution arising out of insanity proceedings. However, it does appear that such an action will lie and that generally the elements are the same, except, of course, that an insanity proceeding must be instituted rather than a prosecution commenced.

> "One who initiates civil proceedings against another which allege the other's insanity or insolvency is liable for the harm to the other's reputation caused thereby, if
>
> (a) the proceedings are initiated
> (i) without probable cause, and
> (ii) primarily for a purpose other than that of securing the adjudication of the claim on which the proceedings are based, and
>
> (b) except where they are ex parte, the proceedings have terminated in favor of the person against whom they are brought." 3 Restatement of the Law of Torts, Sec. 678, p 455.

It will be noted that the requirement of the Restatement that the proceedings must be instituted for a purpose other than of securing an adjudication is simply another way of saying that the proceedings must be acuated by malice. Such a construction is consistent with ORS 161.010(4) which defines "malice" and "maliciously" as importing "a wish to vex, annoy or injure another person, established either by proof or presumption of law."

While there is authority for the view that an action for malicious prosecution of a civil action which does not interfere with the person or property of a party generally will not lie, there is a cause of action against a person who instigates an insanity proceeding against another maliciously and without probable cause. *Reade v. Halpin,* 184 NYS 439, 193 App Div 566; *Cragin v. Zabriskie,* 12 NYS2d 871, 15 NYS2d 136, 258 App Div 714; *Brandt v. Brandt,* 297 Ill App 306, 17 NE2d 535; *Pickles v. Anton,* 49 ND 47, 189 NW 684; *Lindsay v. Woods et ux.,* (Tex Civ App) 27 SW2d 263; *Suhre v. Kott* (Tex Civ App) 193 SW 417; *Dauphine v. Herbert et al.,* (La App) 37 So2d 829; *Kellogg v. Cochran,* 87 Cal 192, 25 P 677; *Fisher et al. v. Payne et al.,* 93 Fla 1085, 113 So 378; *Brown v. Selfridge,* 224 US 189, 32 S Ct 444; *Straka v. Voyles,* 69 Utah 123, 252 P 677; *Puutio v. Roman,* 76 Mont 105, 245 P 523; *Griswold v. Griswold,* 143 Cal 617, 77 P 672. See also, Note, 145 ALR 711, et seq. The reasons therefor are well-stated in *Reade v. Halpin,* supra, at page 439, as follows:

"* * * In respect to its relation to an action for malicious prosecution, it much more closely in its characteristics resembles the characteristics of a criminal action. It is not instituted for the enforcement of an individual right or the redress of an individual wrong. The person who institutes it has nothing personally to gain or lose, and if acting in good faith his sole purpose is the protection of the alleged lunatic and the protection of society. In its consequences it may be more serious than a criminal prosecution. It seeks nothing less than the incarceration of the individual proceeded against. * * *"

■ While defendant argues that such action cannot be maintained in this state, our decision is to the contrary. We therefore pass on to plaintiff's main con-

tentions to the effect that there was sufficient evidence of lack of probable cause and of malice to justify the trial court in submitting the case to the jury and hence the verdict should be allowed to control the judgment. Since the questions presented are the same as presented in the motion for a directed verdict, we are required to consider the evidence relating thereto in the record, and every legitimate inference that can be drawn from it in the light most favorable to plaintiff.

From the evidence it appears that an insanity proceeding was commenced by the filing of a verified petition prepared by a deputy in the office of the county clerk of Multnomah County, signed by Carolyn B. Hill, wife of the plaintiff, and by the defendant. In this petition it was alleged that the defendant was mentally ill "as evidenced by the following facts: He is dangerous; has hallucinations; sees things that do not exist; is extremely nervous; is destructive; tears his clothes and breaks things up; has been mentally disturbed for at least three months." The petition further alleges that by reason of such illness plaintiff was in need of treatment, care or custody. The printed portion further stated that plaintiff had relatives in this state, and following that was typed in the names of the wife and this defendant. It appears the typing and dictation were done by the deputy county clerk, after talking to plaintiff's wife, as well as defendant, and nowhere else does it appear that the defendant ever claimed in fact to be a relative, or that he told the clerk he was a relative.

Plaintiff at the time of the trial was 29 years of age. While under the age of 18 years he was in California, committed to a juvenile authority for robbery and grand theft. He was married to Helen Hill, and divorced in 1954, there being three children. He was

married before that to a woman named "Louise" and the marriage was annulled. At the time of the trial he was again married to Helen Hill, and Carolyn Hill was his wife at the time the lunacy proceedings were instituted. It further appears that on July 11, 1949, he was, on a plea of guilty, convicted in the United States District Court for the Northern District of California of a violation of the Motor Theft Act, sentenced to three years, and on the seventh day of March, 1947, was convicted in the Superior Court of the State of California for Sutter County of the crime of forgery, although he claims he was not guilty of this and offers explanation of the other charge.

Plaintiff was at one time in the army, where he suffered a leg injury, and was hospitalized. Defendant's Exhibit 4(6), which is a letter signed by plaintiff, dated September 18, 1949, discussing his army experience, stated "During my stay at the General Hospital I had a nervous breakdown, and they would not release me and shipped me to the Veteran's Hospital at Waco, Texas for observation", and that he received a "medical discharge". Further, his certificate of disability for discharge shows, "Recommended for discharge on account of epilepsy, epileptic clouded state", and further, the report of the medical officers therein shows "incapacitated by reason of recurrent attacks of clouding of consciousness, gastro-intestinal disturbances and episodes of amnesia, also irritability and mood changes, all of which render him unfit to perform the duties of a soldier." Further, the physicians appointed by the court, Drs. G. B. Haugen and E. H. Dammasch, who examined plaintiff at the insanity hearing, did not find plaintiff to not be mentally ill, but found him "not so mentally ill as to be in need of treatment, care or custody." In their report accom-

panying the finding they found plaintiff to be a "psychopath, not committable." There is in the record the uncontradicted testimony of a psychiatrist, Dr. James Shanklin, to the effect that a "psychopath" is a person who is ill, medically speaking.

■■ Some of the circumstances set forth may not be competent in examining the record as to defendant's belief at the time he signed the petition. However, in setting forth the rules of law that hereafter are to govern in cases of this type it is well to keep in mind, as was stated in defendant's brief, the hazard of subjecting responsible men and women to such actions in cases where the examining physicians conclude mental illness does not require commitment. Of course, whether probable cause existed is not dependent upon the actual state of the case, but upon the honest and reasonable belief of the party commencing the proceeding. *Watts v. Gerking,* 111 Or 641, 660, 222 P 318, 228 P 135. As it relates to criminal cases, reasonable cause is defined to be such a state of facts in the mind of the prosecutor as would lead a person of ordinary caution and prudence to believe or entertain an honest and strong suspicion that the person charged is guilty. *White v. Pacific Tel. and Tel. Co.,* 162 Or 270, 280, 90 P2d 193.

■■ With relation to insanity proceedings we think the better rule is to the effect that it is sufficient that the defendant has an honest belief that the plaintiff was insane without showing that such belief was strong. *Treloar v. Harris,* 66 Ind App 59, 117 NE 975. Further than that, where the personal knowledge of the defendant is such as induces him to believe honestly in the probable insanity of the plaintiff and is such as would induce such belief in the mind of a person of

ordinary prudence and caution, inquiry is not necessary. *Treloar v. Harris,* supra. Also, a want of probable cause cannot be inferred from proof that the defendant acted maliciously in instituting lunacy proceedings. *Barton v. Woodward,* 32 Idaho 375, 182 P 916, 5 ALR 1090. Nor is a judgment on the merits in favor of an alleged insane person evidence of want of probable cause. *Barton v. Woodward,* supra; *Dugan v. Midwest Cap Co.,* 213 Iowa 751, 239 NW 697. Such a judgment serves to prove the successful outcome of the case.

Since probable cause does not depend on the actual state of the case but on the honest belief of the party instigating the action, it becomes necessary to review defendant's connection with the circumstances leading up to the petition for insanity. Defendant was an osteopathic physician who saw the plaintiff six or seven times in the two years preceding and had seen him for a leg and back injury and shoulder. The doctor testified at one time that plaintiff came in and was crying and extremely nervous, and asked for help, and that he made an appointment for plaintiff at the Veterans Administration, which plaintiff admits he kept. Defendant's testimony in that regard was verified by other attendants in the office. Plaintiff denies that he was crying but says the doctor told him, "Well, I could get you a pension on your nerves." Plaintiff admits that he was discharged from the army because of his leg and "because I was nervous", although he states he got better along the years. Plaintiff denies attempting to jump out of the window at the Veterans Hospital while hospitalized on account of injury received while in the army, when refused a pass, although the army hospital records show it. Plaintiff admits that he had a discussion with the army doctor

about it, plaintiff claiming that he had a cast on his leg and was drunk, and "I liked to fell out the window." Plaintiff also denied the matters disclosed by the army hospital records with reference to nightmares, vomiting spells, etc. Plaintiff admits that he discussed his nervous condition with defendant. While plaintiff first denied discussing such matter upon being asked, "Well, Mr. Hill, you testified that you did discuss a nervous condition," the plaintiff answered, "Discussed it, he asked me to go to the—that I get a pension and he would help me get a pension but I went down to the Veterans like he said."

Defendant saw plaintiff in July or August prior to the hearing, and plaintiff at that time appeared normal. Shortly prior to the filing of the petition, plaintiff's then wife called defendant on the phone, told him that there were marital troubles and that plaintiff was threatening her, whereupon defendant directed her to the district attorney. Later, upon request of the then wife, defendant signed the petition. At the time of signing, plaintiff had been charged with the crime of threatening to kill his wife, which was later dismissed on the grounds that the complaining witness did not desire to prosecute. One witness testified that he had seen the doctor at the wife's home one time, which the doctor denied. No suggestion is made of improper conduct. The defendant testified that he thought the plaintiff dangerous and it appeared signed the petition, at least in part based upon his own observations.

■ Now this court does not know just what the doctor knew of plaintiff's nervous trouble while in the army, although some of the record is above related. Boiled down, it appears that defendant knew the plaintiff well; that plaintiff did have some nervous trouble;

that it was discussed; that the defendant was a physician and much better qualified than a layman to assess plaintiff's condition and that he had ample opportunity to so assess it. There is no direct or actual evidence of any improper motive other than mere suspicion or that the defendant in any way had anything to gain by the commitment of plaintiff. A jury is permitted but not required to infer malice from want of probable cause. *Engelgau v. Walter,* 181 Or 481, 490, 182 P2d 987. Under the circumstances here we do not find substantial evidence sufficient to justify a jury in finding that there was a wish to vex, annoy, or injure another person.

While lack of evidence of malice is not necessarily determinative of lack of probable cause, some of the evidence upon which a finding is reached with regard to both must necessarily be the same. On the other hand, we hold that in actions of malicious prosecution with relation to insanity proceedings there must be more than a mere suspicion of lack of honest belief of an ordinarily prudent person, i.e., lack of probable cause, to carry the case to the jury, and that in this case that burden has not been met. Since we have held that plaintiff has failed to sufficiently show lack of probable cause, we also hold that there was insufficient evidence of malice.

In allowing judgment notwithstanding the verdict, the court also allowed the defendant his costs and disbursements, although such was not requested in his amended answer, and plaintiff assigns as error such allowance.

ORS 16.210(2) (c) provides, in part, that a complaint shall contain "A demand of the relief which the plaintiff claims." ORS 16.290 relating to the required

contents of an answer does not contain any such provision. On the contrary ORS 20.060 provides, in part, that "Costs are allowed of course, to the defendant in the actions mentioned in ORS 20.040, unless the plaintiff is entitled to costs therein, * * *." ORS 20.040 provides, in part, that costs are allowed of course, to plaintiff upon a judgment in his favor in "An action not hereinbefore specified for the recovery of money or damages when the plaintiff shall recover $100 or more." While the case did not terminate in the circuit court in a judgment for plaintiff in excess of $100, we think the intent of ORS 20.040 was only to specify with relation to defendant the type of action involved, otherwise an absurd result would follow. Since the answer need not contain a demand for costs, we therefore hold that costs are allowable as a matter of course to defendant here and that plaintiff's assignment of error in that regard is without merit. See also, *Hurst v. Larson,* 94 Or 211, 215, 184 P 258.

In view of the conclusions reached, it follows that the judgment of the circuit court must be affirmed.