[Decided August 2, 1897.]

## HESS *v.* OREGON BAKING COMPANY.

(49 Pac. 803.)

EFFECT OF WAIVING PRELIMINARY EXAMINATION.—The waiver of a preliminary examination by one charged with a crime is equivalent to a finding by the committing magistrate that there is probable cause to believe the defendant guilty.

WAIVING EXAMINATION — EVIDENCE.—A finding on a preliminary examination that there is sufficient cause for holding the accused to answer is only prima facie evidence of probable cause on a trial for malicious prosecution, and may be overcome by competent evidence. .

PLEADING — MALICIOUS PROSECUTION.—In an action for malicious prosecution an allegation in the complaint that there was no probable cause for the arrest is sufficient to authorize the admission of evidence of want of probable cause, notwithstanding a waiver by plaintiff of the preliminary examination in the criminal proceedings.

MALICIOUS PROSECUTION—INSTRUCTION AS TO PROBABLE CAUSE.—In an action for malicious prosecution, if the facts are undisputed, the court must declare as a matter of law whether they constitute probable cause; but if the evidence is conflicting the case must go to the jury with instructions that if certain facts exist there was or was not probable cause: *Gee* v. *Culver*, 12 Or. 233, approved.

ACTION FOR MALICIOUS PROSECUTION—GOOD FAITH.—Any citizen who in good faith causes the arrest of one whom he has good reason to believe has violated the law will be protected in an action for malicious prosecution, although the action proves unfounded.

ADVICE OF PROSECUTING OFFICER.—One who in good faith seeks the advice of a prosecuting officer about the commencement of a criminal prosecution and discloses to him all the facts and circumstances within his knowledge or which he has reasonable ground to believe, relating to the offense, and is advised by such officer to institute the prosecution, has probable cause for so doing, if he acts in good faith upon such advice even though there were other exculpatory facts which he might have ascertained by diligent inquiry.

From Clackamas: THOMAS A. MCBRIDE, Judge.

Action by Elizabeth Hess against the Oregon German Baking Company (a corporation), and Theodore H. Liebe to recover damages for malicious prosecution. The cause having been removed from Portland to Oregon City for trial, plaintiff recovered judgment for $9,250, from which this appeal was taken.

REVERSED.

For appellants there was a brief over the names of *Cake & Cake*, and *Bronaugh, Fenton, McArthur & Bronaugh*, with an oral argument by *Messrs. Harry M. Cake* and *William D. Fenton*.

For respondent there was a brief over the name of *McGinn, Sears & Simon*, with an oral argument by *Messrs. Henry E. McGinn* and *Nathan D. Simon*.

MR. JUSTICE BEAN delivered the opinion.

This is an action to recover damages for malicious prosecution, and comes here on an appeal from a judgment in favor of plaintiff. In the complaint it is averred that the defendant Liebe falsely, maliciously, and without probable cause charged the plaintiff in a criminal information before a magistrate with the crime of larceny, upon the hearing of which she waived an examination, and was bound over to appear before the grand jury, which body returned an indictment indorsed "Not a true bill," and she was thereupon discharged, and her bail exonerated. It is contended that the complaint does not state a cause of action, because it appears therefrom that, when the plaintiff was brought before the magistrate, she voluntarily waived a preliminary examination, which it is claimed was practically a confession or acknowledgment that there was probable cause for her arrest. There does not appear to be any provision in the law for the waiver of a preliminary examination by a person accused of a crime before a magistrate, although it is quite a common, and no doubt unobjectionable, procedure. Its effect, however, can be nothing more than an admission that there is sufficient cause for holding the accused to answer, and this is the only result which could flow from an examination. In other words, the waiver of an examination is tantamount in law to a finding by the magistrate that there is sufficient cause to believe the defendant guilty, and the authorities are substantially agreed that such a finding is not conclusive, but only prima

facie, evidence of probable cause, which may be overcome by competent evidence on the trial, and that an allegation in the complaint of a want of probable cause is a sufficient averment for the admission of such proof: *Louisville Railway Company* v. *Hendricks*, 13 Ind. App. 10 (40 N. E. 82), and authorities there cited. This being so, the complaint is not open to the objection made.

It is next claimed that the court erred in instructing the jury that the waiver of an examination is not of *itself* conclusive evidence of the existence of probable cause, but "is a single fact to be weighed by the jury for what it, under all circumstances, appears to be worth in determining that question." The objection to this instruction is that it assumes the question as to whether probable cause has been shown to be one of fact, to be determined by the jury, and not of law, for the court; and this seems to have been the view of the trial judge as indicated by his general instructions. After defining probable cause, and giving an unusually clear and accurate statement of the law as to when it would be a defense to an action of this character, the court concluded its charge upon the subject as follows: "If therefore you find that the defendant had reasonable ground to believe and suspect that the plaintiff was guilty of larceny, or had knowingly received the avails of the larceny committed by another, and was assisting such other to secrete such avails, with the view to place them beyond the reach of the owner, and that, acting on such belief, he instituted the proceedings complained of, your verdict should be for the defendant." This instruction nec-

essarily involved the submission to the jury of the question of probable cause. There is no distinction between the existence or nonexistence of a reasonable ground of belief, and the existence or want of probable cause. The difference is one of expression only, and not of substance. The existence of reasonable grounds for believing a charge to be true is nothing more than probable grounds for making it. And, in determining whether the defendant had reasonable grounds to believe the plaintiff guilty, the jury must necessarily decide whether or not there was probable cause for instituting the prosecution. The charge of the court, therefore, was nothing more than defining probable cause, and permitting the jury to determine whether the facts which they might consider to be proved were within or without that definition.

The point for decision, then, is whether the question of probable cause in an action for malicious prosecution is one of fact, to be submitted to the jury, or of law, to be decided by the court. The decisions upon this question are not entirely uniform, but we think the great weight of authority is to the effect that in this class of actions the question of probable cause is a mixed one of law and fact, in the sense that the facts, when in controversy, are to be determined by the jury, but whether they constitute probable cause is for the court. " No rule of law is better settled, both in England and in America," says Mr. Thompson, " than that in civil actions for damages for the malicious prosecution of a criminal action the question of probable cause is a question of law, which the judge must decide, upon established or conceded facts,

and which it is error for him to submit to the jury":
2 Thompson on Trials, § 1613.   And Mr. Newell says
that "what facts, and whether particular facts, consti-
tute probable cause, is a question exclusively for the
court.   What facts exist in a particular case when
there is a dispute in reference to them is a question
exclusively for the jury.   When the facts are in con-
troversy, the subject of probable cause should be sub-
mitted to the jury, either for specific findings of the
facts, or with instructions from the court as to what
facts will constitute probable cause.   These rules in-
volve an apparent anomaly, and yet few, if any, rules
of the common law rest upon greater unanimity or
strength of authority": Newell on Malicious Prosecu-
tion, 277.   In *Panton* v. *Williams*, 2 Adolphus & Ellis,
169, 42 English Common Law Reports, 622, decided
in 1841, where the question was elaborately examined
both by counsel and the court, TINDAL, C. J., review-
ing the earlier authorities, at length concluded that,
in cases of this character, whether the facts which are
relied upon to show probable cause are true or not is
a question for the jury, but whether they constitute
probable cause is a question wholly for the court.
"There have been some cases in the later books," he
said, "which appear at first sight to have somewhat
relaxed the application of that rule, by seeming to
leave more than the mere question of the facts proved
to the jury; but, upon further examination, it will be
found that, although there has been an apparent,
there has been no real, departure from the rule.
Thus, in some cases, the reasonableness and probabil-
ity of the ground for prosecution has depended, not

merely upon the proof of certain facts, but upon the
question whether other facts which furnished an an-
swer to the prosecution were known to the defendant
at the time it was instituted.    Again, in other cases,
the question has turned upon the inquiry whether the
facts stated to the defendant at the time, and which
formed the ground of the prosecution, were believed
by him or not.    In other cases the inquiry has been
whether, from the conduct of the defendant himself,
the jury will infer that he was conscious he had no
reasonable or probable cause.    But in these and many
other cases which might be suggested it is obvious
that the knowledge, the belief, and the conduct of the
defendant are really so many additional facts for the
consideration of the jury; so that, in effect, nothing is
left to the jury but the truth of the facts proved, and
the justice of the inferences to be drawn from such
facts, both which investigations fall within the legiti-
mate province of the jury, while at the same time
they have received the law from the judge,—that, ac-
cording as they find the facts proved or not proved,
and the inferences warranted or not, there was reason-
able or probable ground for the prosecution, or the
reverse.    And, such being the rule of law where the
facts are few and the case simple, we cannot hold it to
be otherwise where the facts are more numerous and
complicated.    It is undoubtedly attended with greater
difficulty in the latter case, to bring before the jury
all the combinations of which numerous facts are sus-
ceptible, and to place in a distinct point of view the
application of the rule of law, according as all or some
only of the facts, and inferences from facts, are made

out to their satisfaction. But it is equally certain
that the task is not impracticable; and it rarely hap-
pens but that there are some leading facts in each
case which present a broad distinction to their view,
without having recourse to the less important circum-
stances that have been brought before them."

In a great majority of the American states the same
rule has been adopted, and it is held to be the duty of
the court to determine, as a matter of law, whether a
given state of facts, when conceded or established,
no matter how numerous or complicated, constitutes
probable cause for instituting a criminal prosecution.
Whether the facts and circumstances alleged to show
probable cause are true and exist is, of course, a ques-
tion of fact, and, when controverted, must be deter-
mined by the jury, but whether, supposing them to be
true, they amount to probable cause, is a question of
law. If none of the facts are in dispute, the court
must decide the question without the intervention of
a jury; but, if the case cannot be so decided, it must
go to the jury with instructions from the court that
certain facts, if found by them to exist, do or do not
constitute probable cause; or, as put by WALDO, C. J.,
in *Gee* v. *Culver*, 12 Or. 233 (6 Pac. 776), "the judge
must say to the jury: 'I tell you, if you think so and
so, there is a want of reasonable and probable cause.'"
In short, the jury must determine the facts if contro-
verted, but not their legal effect. "What facts and
circumstances amount to probable cause is a pure
question of law; whether they exist or not in any par-
ticular case is a pure question of fact. The former is
exclusively for the court, and the latter for the jury,"

says the Supreme Court of Massachusetts in *Stone* v. *Crocker*, 24 Pick. 84. "Probable cause is in the nature of a judgment to be rendered by the court upon a special verdict of the jury," says Judge HARRISON in *Ball* v. *Rawles*, 93 Cal. 227 (28 Pac. 938, 27 Am. St. Rep. 174), "and is not to be rendered until after the jury has given its verdict upon the facts by which it is to be determined. It is not, however, necessary that the facts be found by the jury in the form of a special verdict. The court may instruct them to render their verdict for or against the defendant, according as they shall find the facts designated to it which the court may deem sufficient to constitute probable cause. But it is necessary for the court, in each instance, to determine whether the facts that they may find from the evidence will or will not establish that issue. Neither is it competent for the court to give to the jury a definition of probable cause, and instruct them to find for or against the defendant, according as they may determine that the facts are within or without that definition. Such an instruction is only to leave to them in another form the function of determining whether there was probable cause. The court cannot divest itself of its duty to determine this question, however complicated or numerous may be the facts. It must instruct the jury upon this subject in the concrete, and not in the abstract, and must not leave to that body the office of determining the question, but must itself determine it, and direct the jury to find its verdict in accordance with such determination. The court should group in its instructions the facts which the evidence tends to prove, and then instruct the

jury that, if they find such facts to be established, there was or was not probable cause, as the case may be, and that their verdict must be accordingly."

Without further elaboration of this question or further special reference to the authorities, it is sufficient to say that, under the adjudged cases, it is generally the duty of the trial court, in instructing juries in cases of this character, to apply the law to the facts by telling them whether the facts which the evidence tends to establish, if found by them to exist, will or will not constitute probable cause for the prosecution, leaving to the jury only the question as to the existence of such facts, and that it is error to define probable cause in general terms, and to submit to the jury the question as to whether the facts in the particular case do or do not come within such definition. The credibility of the evidence, and what facts it proves, are for the jury; but whether such facts do or do not constitute probable cause is a question exclusively for the court. The court should therefore, by means of a hypothetical instruction, group the facts which the evidence tends to prove, and instruct the jury that, if they find such facts to have been established, they must find that there was or was not probable cause: 2 Thompson on Trials, §§ 1618, 1629, 1630; 2 Greenleaf on Evidence, § 454; *Ball* v. *Rawles,* 93 Cal. 222 (27 Am. St. Rep. 174, 28 Pac. 937); *Driggs* v. *Burton,* 44 Vt. 124; *Wilson* v. *Bowen,* 64 Mich. 133 (31 N. W. 81); *Bulkeley* v. *Smith,* 2 Duer, 261; *Masten* v. *Deyo,* 2 Wend. 424; *Bulkeley* v. *Keteltas,* 6 N. Y. 384; *Besson* v. *Southard,* 10 N. Y. 236; *Stewart* v. *Sonneborn,* 98 U. S. 187; *Atchison Railroad Company* v. *Watson,* 37 Kan. 773 (15

Pac. 877); *Cole* v. *Curtis*, 16 Minn. 182; *Burton* v. *St. Paul Railway Co.* 33 Minn. 189 (22 N. W. 300); *Smith* v. *Munch*, 65 Minn. 256 (68 N. W. 19); *Brooks* v. *Bradford*, 4 Colo. App. 410 (36 Pac. 303, 14 Cent. Law J. 82); *Emerson* v. *Cochran*, 111 Pa. St. 619 (4 Atl. 498, and note). This rule is peculiar to this class of actions, but is one of long standing, and founded upon sound reason, good authority, and public policy. Actions to recover damages for malicious prosecution have never been favored in law, although they have been readily upheld when it is shown that the prosecution was instituted through actual malice, and without probable cause. Malice in such cases is always a question for the jury, but as the authority to institute a criminal prosecution, and the extent of such authority, are derived from the law, the law must judge as to what will constitute probable cause therefor.

The welfare of society imperatively demands that those who violate the law shall be promptly and speedily punished, and, to accomplish that purpose, the rule has been firmly established that any citizen who has good reason to believe that the law has been violated may cause the arrest of the supposed offender; and if, in doing so, he acts in good faith, the law will protect him against an action for damages, although the accusation may in fact be unfounded. This rule is founded on grounds of public policy to encourage the exposure of crime and the punishment of criminals, and, when, therefore, the act of a citizen in thus enforcing the law is challenged, the court must determine the question, when the facts are admitted or

established, as to whether he had probable cause for
so doing, and not leave it to the arbitrament of a jury.
Because this rule of law was not followed in the sub-
mission of the case under consideration, it must be
reversed, and a new trial ordered, although the in-
structions as actually given by the court are unobjec-
tionable and a lucid statement of the law, in view of
the theory upon which the case was submitted by the
trial judge.

One of the defenses relied upon was that, before
instituting the criminal prosecution against the plain-
tiff upon which this action for damages is founded,
the defendant in good faith sought the advice of the
proper district attorney, and made to him a full and
fair statement of all the facts and circumstances bear-
ing on the case within his knowledge or belief, and
was advised by that officer that there was sufficient
cause for instituting the prosecution, and that he
acted upon such advice.  Upon this question the
court charged the jury that "where a party has com-
municated to the district attorney all the facts bearing
on the case of which he has knowledge or could have
ascertained by reasonable diligence and inquiry, and
has acted upon the advice received, honestly and in
good faith, the absence of malice is established, the
want of probable cause is negatived, and the action
for malicious prosecution will not lie.  But he must
act in good faith, and fairly state the substance of all
the material information he has in his possession in
relation to the fact of the alleged crime."  Objection
is made to this instruction because, under the rule
therein announced, in order to shield himself by

showing that he acted on the advice of the district
attorney, the defendant was required to show that he
disclosed to that officer, not only all the facts bearing
on the guilt or innocence of the plaintiff within his
knowledge or belief, but also such facts as he could
have found out by reasonable diligence and inquiry.
The instruction in question is substantially in the
language of Newell on Malicious Prosecution (p. 310),
and is an expression to be frequently found in judicial
opinions, but is probably a little broader than the au-
thorities warrant when the defense relied upon is that
the defendant, in instituting the prosecution, followed
and acted upon the advice of the public prosecuting
officer.   The rule seems to be that where one seeking
in good faith the advice of a public prosecuting officer
about the commencement of a criminal prosecution,
discloses to such officer all the facts and circumstances
within his knowledge, or which he has reasonable
ground to believe, relating to the offense, and is ad-
vised by that officer to institute the prosecution, his
defense of probable cause will be established if he
acted in good faith upon such advice, even though
there were other exculpatory facts which he might
have ascertained by diligent inquiry.  He is bound to
make a full and fair disclosure of all the material
facts within his knowledge; and, if he has reason to
believe that there are other facts bearing upon the
guilt or innocence of the accused, he must either dis-
close that belief to the prosecuting attorney, or him-
self make inquiry to ascertain the facts in relation to
the matter, but more than this he is not required to
do.  He is not required to institute a blind inquiry to

ascertain whether facts exist which would tend to the exculpation of the party accused. If he honestly believes that he is in possession of all the material facts, and makes a full, fair, and candid statement of them to the prosecuting officer, and acts in good faith on the advice of that officer, he ought to be protected. See the following authorities, to which reference is made for a fuller discussion of this question: Newell on Malicious Prosecution, 318; *Johnson* v. *Miller*, 69 Iowa, 562 (58 Am. Rep. 231, 29 N. W. 743); *Dunlap* v. *New Zealand Insurance Company*, 109 Cal. 365 (42 Pac. 29); *Schippel* v. *Norton*, 38 Kan. 567 (16 Pac. 804).

There are several other assignments of error discussed in the brief of counsel, but, as they will probably not arise on another trial, they will not be considered at this time.

REVERSED.