Argued July 12, affirmed October 18, 1977

# LAMBERT, *Respondent,*
### *v.*
# SEARS, ROEBUCK AND CO., *Appellant.*
## (TC 418 601, SC 24832)

570 P2d 357

James H. Clarke, Portland, argued the cause for appellant. On the briefs with him were Robert E. Maloney, Jr., and Dezendorf, Spears, Lubersky & Campbell, Portland.

Thomas A. Caruso, Portland, argued the cause for respondent. With him on the brief were Bailey, Doblie and Bruun, Portland.

TONGUE, J.

Linde, J., concurring.

Denecke, C. J., joins in the concurring opinion.

**TONGUE, J.**

This is an action for damages for malicious prosecution. The case was tried before a jury, which returned a verdict in favor of plaintiff for $10,000 general damages, $1,350 special damages and $10,000 punitive damages. Defendant appeals from the judgment on that verdict. We affirm.

Because defendant contends that the trial court erred in denying defendant's motion for directed verdict upon the ground that there was no probable cause and no malice, as a matter of law, we must review the facts relating to those questions. In doing so, we must apply the established rule that in deciding whether the evidence was sufficient to require the denial of a defendant's motion for a directed verdict, we must view the evidence in the light most favorable to the plaintiff, resolve all conflicts in the testimony in his favor, and accord to the plaintiff the benefit of all favorable inferences from the evidence. *See Cronn v. Fisher,* 245 Or 407, 416, 422 P2d 276 (1966), and *Lampos v. Bazar, Inc.,* 270 Or 256, 267, 527 P2d 376 (1974). Viewed in that light, the facts in this case may be summarized as follows.

*Summary of the facts.*

(a) *Events prior to arrest.*

Plaintiff is a retired railroad employee. He had been a Sears customer for 16 years and had a Sears' credit card. He needed a 19 millimeter socket wrench to change the oil of his car. On the morning of March 25, 1975, he went to the Portland Sears store, where he purchased and paid for such a wrench.

Plaintiff attempted to fit the socket wrench to the oil plug of his car, but found it to be a loose fit. He then showed it to a Mr. Wilson, the service manager of a nearby garage, who told him that it might be defective and suggested that he take it back to Sears.

Mr. Lambert then returned to Sears with the socket

in his hip pocket. He testified that he took it out of his pocket at the cash register, looked around for a salesman, held it up as a salesman passed by, and asked where he could get a handle for it. The salesman said that he was busy and pointed to a "rack." During this time plaintiff was being observed by a Sears' security officer, who stated in his report that he saw plaintiff "come into hardware."

Plaintiff testified that he then went to that "rack" where he also saw the 19 millimeter sockets; that with the socket in his hand he reached up, took a socket from the display, held them both in his hands and tried them, as well as other sockets from the rack, on a bolt he had with him. The Sears' security man testified that he also observed plaintiff during this time.

According to plaintiff, he next looked for a time at open-end wrenches and other items and then returned with two of such wrenches to the sockets, where he spent some time testing them against the sockets.

Plaintiff testified that he then put his own socket in his hip pocket and decided to buy the wrench, which he took to a salesgirl and paid for, as observed by two Sears' security officers. He testified that he next paused to look at a display of saws, went up an escalator and then thought that he had lost a washer. He then stopped at a table and took everything out of his hip pocket, including the socket. The security officers saw him stop and empty his pocket.

Mr. Lambert next made a telephone call, left the store, and paused to read the headlines of a newspaper. He was at that time surrounded by three Sears' security men who asked him if he had anything in his pocket that he had not paid for and he answered, "No." They then asked him what he had in his pocket. Plaintiff took the socket out of his pocket.

One of the Sears' security officers, when asked when he made "the decision that [he] was going to formally charge [plaintiff] with a crime" answered,

"When he left the store with the merchandise" and "prior to any statement by Mr. Lambert." He also testified that the "purpose of the [subsequent] interrogation" was "detention until the [police] officer arrived, basically" and that he also "wanted [plaintiff] to make a statement that could be used in the form of his admission or confession."

(b) *Events subsequent to arrest.*

Plaintiff was taken to a room where he was searched for possible weapons, photographed, and asked to sign a printed form, which he thought to be a confession and refused to sign.

He testified that he wanted to give an explanation for his possession of the socket, but that each time he tried to do so he was "cut off" with the question, "Why did you have that in your hip pocket?" and was accused in a loud voice of stealing. He finally decided that the security officers were not going to listen to any explanation.

One of the Sears' security officers testified that he did not ask plaintiff for an explanation because he and another security officer saw plaintiff remove the socket and conceal it and, as a result, never considered the possibility that plaintiff was telling the truth or that he (the security officer) might have had a momentary "gap" in his vision as he observed what plaintiff did with the socket.

(c) *The criminal prosecution.*

Four days later a Sears' security officer went to the district attorney's office to file a complaint against Mr. Lambert. He told a deputy district attorney that he saw plaintiff "take a socket and put it in his left rear pocket" and leave the store without paying for it; that when stopped plaintiff said he did not know how it got there; that plaintiff later asked the security officers if they would be appearing in court and that when he was told that it would depend upon whether he pleaded

"not guilty," Mr. Lambert said, "Don't worry, it is not going to go that far."

The deputy district attorney testified that the security officer told him that plaintiff "could not explain how the socket got into his pocket" and did not say that plaintiff had tried to give an explanation, but was "cut off" when he attempted to do so, and also did not say that plaintiff displayed the socket to a salesman after entering the store and that before leaving the store plaintiff also emptied his pocket, including the socket, in plain view and said outside the store that he had paid for everything.

Plaintiff was found not guilty by a jury verdict in the criminal prosecution. In that trial, as well as in the trial of this proceeding, plaintiff's testimony was corroborated in part by the testimony of Mr. Wilson, the service manager of the garage, who testified that on the morning prior to his arrest plaintiff had shown to him what appeared to be a new Sears' socket wrench that did not fit properly and that he suggested that plaintiff take it back to Sears and exchange it or get a different wrench.

Defendant's security officers gave a somewhat different version of these events. These, however, were the facts as the jury was entitled to find them.

*Defendant did not have probable cause to prosecute plaintiff.*

■ Defendant contends that it had probable cause to institute the prosecution as a matter of law. In making that contention defendant recognizes that although the question of probable cause is a question of law to be decided by the court,[1] the evidence must be considered in the light most favorable to the plaintiff,[2] and that if there are disputes as to material facts, any such

---

[1] *Delp v. Zapp's Stores,* 238 Or 538, 542, 395 P2d 137 (1964).

[2] *Fleet v. May Dept. Stores, Inc.,* 262 Or 592, 598 n.1, 500 P2d 1054 (1972).

disputes are to be submitted to the jury with instructions stating what findings would and would not constitute probable cause.[3]

Defendant contends, however, that there was no dispute as to the material facts. In support of that contention defendant says that plaintiff was seen by its security men to place a Sears' socket in his pocket, where it was concealed; that he left the store without paying for it and, when stopped, he had no receipt for it and gave no explanation other than to claim generally that he had paid for "everything." Defendant cites *Gustafson v. Payless Drug Stores,* 269 Or 354, 361-62, 525 P2d 118 (1974), as holding that:

> "Ordinarily, a storekeeper will have probable cause to believe a customer is shoplifting if the essential facts are that the customer took merchandise and walked out of the store without paying for the merchandise. * * *"

Although in *Gustafson* we said that *ordinarily* such facts will constitute probable cause to believe that a customer is shoplifting, we went on to hold that even though the plaintiff in that case "took merchandise and walked out of the store without paying for the merchandise," the defendant did not have probable cause to prosecute plaintiff under the facts of that case. The facts which we considered (at 362) to be "significant" in reaching that conclusion were as follows:

> "* * * After the plaintiff picked up the cigarettes she never concealed or attempted to conceal them. Plaintiff tendered payment to an employe at a checkstand. Plaintiff had an almost constant conversation with her mother-in-law as she walked through various parts of the store. Plaintiff waited immediately outside the store for five minutes engaging in further conversation. Mrs. Yaw [defendant's security officer] was aware of this conduct."

Although the facts of this case are not identical, here again there were "significant" facts which were

---

[3] *Shoemaker v. Selnes et al,* 220 Or 573, 581, 349 P2d 473 (1960).

in dispute and which we believe to be material. These facts include the following, according to the testimony of the plaintiff.

Upon entering the hardware department of the store plaintiff took a socket out of his pocket at the cash register, looked around for a salesman, and held it up as a salesman passed by who did not help him. When directed by the salesman to the "rack" where the socket wrenches were displayed he held that same socket in his hand, took a socket from the display, and tried them both, as well as other sockets from the rack, on a bolt he had with him. Although he then put one socket in his pocket and went through the check stand without paying for it, he stopped at a table and emptied the contents of that pocket, including the socket, on the table. He then made a telephone call, went through an exit from the store, and paused to read the headlines of a newspaper.

Defendant's security officers saw the defendant enter the hardware department and kept him under surveillance during the entire period. They testified that they made the decision to formally charge plaintiff with the crime "when he left the store with the merchandise."

It may be, as held in *Gustafson,* that "a subtle shoplifter could dispel suspicion" by such conduct. As in *Gustafson,* however, we are of the opinion that "the odds that a person so conducting [himself] is a shoplifter are so slight that this conduct, plus the other circumstances here present [did] not amount to probable cause" to file a criminal action against this plaintiff. *See Gustafson v. Payless Drug Stores,* 269 Or 354, 362, 525 P2d 118 (1974).

Defendant cites *Delp v. Zapp's Stores,* 238 Or 538, 543, 395 P2d 137 (1964), as holding that if merchandise is "completely concealed upon plaintiff's person," there can be "no question of the storekeeper's having reasonable cause to believe she did not intend to pay

for it." That case, however, was an action for false imprisonment arising from an arrest, not an action for malicious prosecution. Also, there were not the same or similiar additional "significant facts" relating to the "conduct" of the plaintiff while in the store, as in *Gustafson* and this case. It may be that the facts of this case would have been sufficient to provide probable cause to stop plaintiff for an explanation of his possession of the socket. It does not necessarily follow, however, that there was probable cause to file a criminal proceeding against him under the facts and circumstances of this case, at least without some further investigation. *Cf. Ira v. Columbia Food Co. et al,* 226 Or 566, 571-72, 360 P2d 622 (1961).

■    Defendant contends, and correctly, that before a duty arises to make such an investigation the "appearances" must be such as to cause a reasonable person to investigate further. *Cf. Hill v. Carlstrom,* 216 Or 300, 308-09, 338 P2d 645 (1959), cited by defendant. *See also Lampos v. Bazar, Inc.,* 270 Or 256, 268-69, 527 P2d 376 (1974), adopting the rule as stated in Prosser, Law of Torts 842, § 119 (4th ed 1971).

Defendant contends that "there were no ambiguous circumstances known to them [defendant's security officers] which might raise a duty to go further," because it was "undisputed" that "plaintiff gave no explanation of the incident; he had no receipt; the socket was one sold only at Sears and was in new condition and still carried the price sticker."

We believe, however, that there were "ambiguous circumstances" in this case. We also believe that for the same reasons that the facts relating to plaintiff's conduct in the store were not sufficient to provide probable cause to institute a criminal action, those same facts were such as to cause a reasonable person to investigate further, at least to the point of asking plaintiff for an explanation and giving him a fair opportunity to give such an explanation.

[ 131 ]

■ In this case one of defendant's security officers testified that he "made the decision that [he] was going to formally charge [plaintiff] with a crime * * * when [plaintiff] left the store with the merchandise" and that "the purpose of the [subsequent] interrogation" was "detention until the officers arrived, basically" and that he also "wanted [plaintiff] to make a statement that could be used in the form of an admission or confession." This is consistent with plaintiff's testimony that he was "cut off" when he tried to make an explanation for his possession of the socket.

From these facts it appears that defendant's security officers not only did not make a further investigation, but deliberately decided not to do so when plaintiff left the store. Although they then asked him if he had anything in his pocket that he had not paid for (to which he answered, "No") the jury could properly find that they gave him no fair opportunity to explain his possession of the socket and were not interested in any such explanation.

■ Defendant next contends that "there were no exculpatory facts to be found which would affect the question of probable cause"; that the "thorough investigation made by the district attorney" confirmed "the version * * * received from Sears' personnel"; that "plaintiff finally abandoned his contention that the receipt allegedly found in the Mazda shop [the nearby garage] was exculpatory" and that "the socket tested by Mr. Wilson at the Mazda shop was not the one found on plaintiff outside the store."

Under the testimony in this case, however, we believe that the jury could have reasonably found that an investigation would have disclosed exculpatory facts in that if plaintiff had been given a fair opportunity to explain his possession of the socket wrench, the defendant's security officers could then have called Mr. Wilson, the service manager at the Mazda garage, and confirmed plaintiff's explanation. The fact that plaintiff was unable to produce a receipt for that item

was not conclusive, but went only to the credibility of his testimony, which the jury was still entitled to believe. As for defendant's contention that the socket tested by Mr. Wilson was not the same as the one found in plaintiff's possession, as testified by him, that also was a fact in dispute and the jury was entitled to believe plaintiff's testimony.

Finally, on this issue, defendant contends that it had probable cause to prosecute the plaintiff because it relied in good faith on the advice of the district attorney after a full and fair disclosure to him of all of the material facts known to it. In making that contention defendant recognizes that "the facts that must be disclosed are those known to the accuser which a reasonable man would regard as pertinent." In support of that contention defendant cites 3 Restatement of Torts § 661(1), Comment (*f*) (1938), and *Lampos v. Bazar, Inc., supra,* among other authorities.

In *Lampos* we held (at 270), quoting from *Kuhnhausen v. Stadelman,* 174 Or 290, 308-09, 148 P2d 239, 149 P2d 168 (1944), that:

"'* * * All the authorities agree that in order to make out this defense it must appear that the defendant 'made a full, fair and honest statement of all the material circumstances of the supposed guilt which are within his knowledge': * * *.'"

*See also* 3 Restatement of Torts § 666(1) (1938), and *Hess v. Oregon Baking Co.,* 31 Or 503, 515-16, 49 P 803 (1897), cited by defendant, among other authorities.

In *Lampos* we also held that normally it is a jury question whether a full and fair disclosure has been made.

In this case the deputy district attorney testified that defendant's security officers told him that plaintiff "could not explain how the socket got into his pocket," but did not tell him that plaintiff tried to give an explanation, or that he displayed a socket to a salesman after entering the store, or that before

[ 133 ]

leaving the store he emptied his pocket, including the socket, in plain view, or that he said outside the store that he had paid for everything.

Defendant says that "none of the alleged 'omitted' details was material to the probability of plaintiff's guilt." On the contrary, and for reasons previously stated, we regard at least some of these "details" as "material." It follows, under this record, that it was properly a jury question whether defendant made a "full, fair and honest statement of all of the material circumstances * * * within his knowledge." This assumes, of course, that there was evidence from which a jury could properly find that defendant relied in good faith upon the advice of the district attorney and that a proper instruction was requested submitting this question to the jury.[4]

*There was evidence from which the jury could properly find that defendant acted with malice.*

Defendant next contends that the trial court erred in denying its motion for a directed verdict for lack of evidence of malice, an essential element in an action for malicious prosecution.

In support of that contention defendant appears to recognize that malice can be inferred from lack of probable cause, at least under some circumstances, but says that "[t]he correct rule * * * only allows malice to be inferred from a lack of probable cause when probable cause is lacking for reasons suggesting that defendant may not have genuinely believed in the guilt of the accused," citing 3 Restatement of Torts §

---

[4]Defendant also assigns as error the failure of the court to give its requested instruction on this subject. The trial court did not err in failing to give that instruction because it was not correct and complete. It would not have informed the jury that the test to be applied by it in determining whether facts which were known to defendant, but not disclosed, were "material" was whether a reasonable person would regard such facts as material in order for the attorney to give a sound opinion. *Cf. Lampos v. Bazar, Inc.,* 270 Or 256, 276-77, 527 P2d 376 (1974). *See also* 3 Restatement of Torts § 661, Comment (*f*) (1938).

[ 134 ]

669 (1938), and Prosser, Law of Torts 848-49, § 119 (4th ed 1971), among other authorities.

This court again considered this problem in *Gustafson v. Payless Drug Stores, supra* (at 366), in which we stated that malice, unlike probable cause, is a question for the jury and then quoted with approval the following statement from *Crouter v. United Adjusters, Inc.,* 266 Or 6, 10, 510 P2d 1328 (1973):

> " '* * * In an action for damages for wrongful attachment the plaintiff, in addition to showing that the defendant did not have probable cause for the attachment, must also prove that the defendant acted with malice. Although the fact that a defendant did not have probable cause for an attachment does not necessarily mean that he acted with malice, the evidence which shows a lack of probable cause may also be considered on the issue of malice. If that evidence alone convinces the jury that the defendant acted with malice, it may so find. But the jury must find, from either that evidence or from other evidence, that in causing the attachment to be made the defendant acted with bad motives or ill will so as to constitute malice.' "

In *Gustafson,* under somewhat similar facts involving "nonsuspicious" conduct of the plaintiff, we held (at 367) that "the lack of probable cause was sufficient evidence of malice * * * to enable the jury to find for plaintiff."

■  In this case, in addition to the facts which we have held to be insufficient to constitute probable cause for the institution of a criminal action, there was evidence from which the jury was entitled to find that defendant's security officers made the decision to institute criminal proceedings against plaintiff when he first left the store, without waiting to find out whether or not he had any explanation for his possession of the socket wrench; that they were not interested in any such explanation from plaintiff, but "cut him off" when he tried to make such an explanation; and that they did not disclose to the prosecuting attorney these and other material facts.

[ 135 ]

Under this record, we hold, as in *Gustafson,* that there was sufficient evidence to permit the jury to infer that defendant acted with malice toward this plaintiff.

■■ For these reasons we hold that the trial court did not err in denying defendant's motion for a directed verdict.[5]

■ Finally, defendant assigns as errors the giving of two instructions to which it took no exceptions at the time of trial, contending that they involve errors which were "apparent on the face of the record," so as to permit this court to take notice of them despite defendant's failure to take proper exceptions to them. In the absence of such exceptions, we decline to consider these assignments of error because, after reviewing the record as a whole, we do not believe that any possible errors in such instructions were so serious as to deprive the defendant of a fair trial.

The judgment of the trial court is affirmed.

**LINDE, J.,** concurring.

If liability for malicious prosecution requires both lack of probable cause *and* malice, as the court has repeatedly held, it becomes important to explain how

---

[5]Defendant also contends that it was entitled to a directed verdict because there was no evidence that it knew the "fact" of plaintiff's innocence when it instituted the prosecution. It is true that plaintiff's complaint alleged, among other things, that "the complaint of defendant was false and plaintiff is innocent of the crime and these facts were known to defendant at that time" and that there was no evidence that defendant had actual knowledge of plaintiff's innocence. Actual knowledge of innocence, however, is not an essential element of the tort of malicious prosecution. The complaint also alleged, in general terms, that defendant instituted the criminal prosecution maliciously and without probable cause. There is no contention that defendant was misled or prejudiced as a result of the additional allegation of actual knowledge.

We find that plaintiff's complaint was sufficient in its allegations without the allegation of actual knowledge. We hold that the trial court properly considered the allegation of actual knowledge to be surplusage and that it did not err in denying defendant's motion for a directed verdict for failure to prove that allegation. *See Hill v. Carlstrom,* 216 Or 300, 304, 338 P2d 645 (1959), *Patterson v. Skoglund,* 181 Or 167, 176-78, 180 P2d 108 (1947).

these are two distinct elements rather than two names for the same thing. I do not believe that the distinction is adequately explained in the passage from *Crouter v. United Adjusters, Inc.,* 266 Or 6, 10, 510 P2d 1328 (1973), quoted in the majority opinion. The quoted passage reads:

> . . . In an action for damages for wrongful attachment the plaintiff, in addition to showing that the defendant did not have probable cause for the attachment, must also prove that the defendant acted with malice. Although the fact that a defendant did not have probable cause for an attachment does not necessarily mean that he acted with malice, the evidence which shows a lack of probable cause may also be considered on the issue of malice. If that evidence alone convinces the jury that the defendant acted with malice, it may so find. But the jury must find, from either that evidence or from other evidence, that in causing the attachment to be made the defendant acted with bad motives or ill will so as to constitute malice.

This passage, and the majority opinions in *Gustafson v. Payless Drug Stores,* 269 Or 354, 525 P2d 118 (1974), and in the present case, focus attention on the evidence adequate to support a finding of "malice" more than on what is to be found. They do this somewhat inconsistently, stating at one point that the same *evidence* that shows lack of probable cause may also be evidence sufficient to show malice, and at another point that the *lack of probable cause* can be sufficient evidence of malice.

I have no doubt that the same evidence may prove that a defendant lacked probable cause to prosecute the plaintiff and also acted with malice. But it is a different proposition that the jury may infer malice "from the lack of probable cause," when the latter conclusion may arise from non-malicious causes such as negligence. While the second phrasing may have originated merely as elliptical shorthand for the first, its effect is to invite the jury to find "malice" whenever they find that the defendant initiated the prosecution of plaintiff without probable cause.

[ 137 ]

To define "malice," defendant invokes the formula of Restatement of Torts §668, that "the proceedings must have been initiated primarily for a purpose other than that of bringing an offender to justice." This states the required malicious attitude of the defendant by exclusion rather than affirmatively, as the epithets "bad motives" and "ill will" do. Perhaps together they would help to clarify the point that something more than lack of probable cause is required.[1] Perhaps a more informative formulation is possible. However, the present case does not offer a proper occasion to pursue a better definition of "malice," since defendant does not object to the jury instructions but to the denial of a directed verdict. I agree with the majority that there would have been sufficient evidence to let the case go to a jury even under a more extensive definition of "malice" and therefore concur.

Denecke, C. J., joins in this concurring opinion.

---

[1] The relationship is further complicated by the statement in *Gustafson*, 269 Or at 357, that a subjective and reasonable belief in the guilt of the accused is necessary for *probable cause,* citing *Hryciuk v. Robinson,* 213 Or 542, 326 P2d 424 (1958). This in effect states that "malice" may be sufficient evidence of lack of probable cause rather than vice versa.