HOEFER, *Appellant,*
*v.*
COPE et al, *Respondents.*

(No. 77-6815, CA 12371)

594 P2d 1300

H. Thomas Evans, Eugene, argued the cause and filed the brief for appellant.

David W. James, Jr., Eugene, argued the cause for respondents. With him on the brief was William N. Kent.

Before Schwab, Chief Judge, and Lee and Joseph, Judges.

JOSEPH, J.

**JOSEPH, J.**

This is an action for malicious prosecution in which plaintiff seeks damages because a shoplifting complaint was filed against him. Defendants were granted a summary judgment. Plaintiff appeals.

Because the matter is before us on summary judgment, we view the evidence in the light most favorable to plaintiff, the party against whom judgment was entered. *Yartzoff v. Democrat-Herald Publishing Co.,* 281 Or 651, 576 P2d 356 (1978). The question is whether there were any unresolved issues of material fact and, if not, whether defendants were entitled to judgment as a matter of law.

Plaintiff entered a retail store pushing two shopping carts he had collected on his way in from the parking lot. He left one of the carts just inside the door and continued with the other to the tool and hardware department. He stopped at a display of socket wrenches and accessories and picked up a socket extension. He held it in his hand for two or three minutes while he looked at other merchandise on the display. He then continued along the aisle and put the socket extension in his right front pants pocket. He stated in his deposition that he was going to put it in the cart, but thought that because of its small size it would fall through the holes in the cart's basket.

From the time he first stopped at the socket display, plaintiff was under the observation of defendant Cope, a security officer. After he saw plaintiff put the socket extension in his pocket, Cope followed him. Plaintiff looked at more tools and then continued through the store, picking out several items, including wash mitts, long-handled brushes, clipboards and a metal bracket, and placing them in the cart. He then went to the check stand.

As the items were rung up, Cope stood watching about 20 feet away. Plaintiff called to the checker's attention that the brackets were priced $1.40 a pair,

but he only wanted one. The checker called to the hardware department for a price check. As she waited for an answer, she turned to another checker and asked the price. Plaintiff was a regular customer of the store and was acquainted with the other checker. He told her he got the bracket from a basket marked "$1.40 a pair." She told his checker to charge $.70, and that was done. The items in the cart totalled $16.69. Defendant paid with a twenty dollar bill, placed his purchases in a bag and left the store.

Before he reached his truck, he was stopped by Cope, who said something like, "Sir, you have a S&K three-eighths extension in your right-hand pocket that you didn't pay for." Plaintiff replied, "Oh, yeah," in such a way that it seemed to Cope plaintiff had just been reminded of the item. Cope asked if plaintiff would mind returning to the store. Plaintiff went back in with Cope, thinking that he would just pay for the item, which was priced $2.15. Instead, Cope took him by the arm and directed him to the rear of the store and upstairs to an office.

Plaintiff asked Cope what was happening. Cope replied, "We just have some forms to fill out." Shortly, Cope placed before plaintiff a form confession. Plaintiff refused to sign. At some point — the timing is not clear[1] — plaintiff "explained his position as a businessman in the community and the fact that he had funds and no reason to steal an item worth slightly more than $2.00."

Cope had a store employee call the police. When the police officer arrived, plaintiff asked her if he was under arrest. She replied that he had been arrested by

---

[1] In his affidavit plaintiff stated:

"There was no attempt to conceal or give any false explanation at the time that the defendant approached me in the parking lot; rather, the item was readily admitted to be in my possession and I *immediately* explained my position as a businessman in the community and the fact that I had funds and had no reason to steal an item worth slightly more than $2.00." (Emphasis supplied.)

In his deposition, however, plaintiff mentioned no explanation made to Cope.

Cope. She wrote out a complaint and asked plaintiff if he had anything to say. He asked if he had a right to have an attorney present. She said he did. He replied that was not necessary and explained to her what had happened.

Plaintiff was brought to trial on a charge of shoplifting, and the jury returned a not guilty verdict. Plaintiff claimed in his affidavit submitted in opposition to the motion for summary judgment in this proceeding that in testifying at the trial Cope had "added incriminating facts which were not actually present in an attempt to enhance his case and get a conviction."

The trial court granted defendants' motion for summary judgment on the ground that Cope

"*** acted with probable cause in that he saw plaintiff exit Bi-Mart store with merchandise concealed in his pocket without paying for the merchandise and there were no other significant facts which would prevent probable cause from arising as a matter of law."

Plaintiff concedes that Cope had probable cause to stop him in the parking lot and to detain him, at least for further questioning. He points out, however, that because this is an action for malicious prosecution and not for false arrest, the proper question is whether defendants had probable cause to institute criminal proceedings against him. He contends that under the circumstances Cope should have investigated further and that had he done so, exculpatory facts would have been revealed.

In *Lambert v. Sears, Roebuck*, 280 Or 123, 570 P2d 357 (1977), also a malicious prosecution action arising out of a shoplifting charge, the court recognized that probable cause to stop a suspected shoplifter and to ask for an explanation of possession of an item was not the dispositive issue. The court held that under some circumstances the failure of a shopkeeper or a security officer to make further inquiries before turning the

suspect over to the police could preclude a finding of probable cause to initiate criminal proceedings.

In *Lambert* the court stated that

"*** before a duty arises to make such an investigation the 'appearances' must be such as to cause a reasonable person to investigate further." 280 Or at 131. (Citations omitted.)

In that case the plaintiff had purchased a socket from a Sears store. He was dissatisfied with it, so he asked a mechanic at a local garage for advice. The mechanic suggested he return the socket. Plaintiff went back to the store and

"[u]pon entering the hardware department *** took a socket out of his pocket at the cash register, looked around for a salesman, and held it up as a salesman passed by who did not help him. When directed by the salesman to the 'rack' where the socket wrenches were displayed he held that same socket in his hand, took a socket from the display, and tried them both, as well as other sockets from the rack, on a bolt he had with him. Although he then put one socket in his pocket and went through the check stand without paying for it, he stopped at a table and emptied the contents of that pocket, including the socket on the table. He then made a telephone call, went through an exit from the store, and paused to read the headlines of a newspaper.

"Defendant's security officers saw defendant enter the hardware department and kept him under surveillance during the entire period. They testified they made the decision to formally charge plaintiff with the crime 'when he left the store with the merchandise.' " 280 Or at 130.

When stopped outside the store and asked if he had anything in his pocket that he had not paid for, Lambert replied "No." One of Sears' security officers testified that the "purpose of the [subsequent] interrogation" was "detention until the [police] officer arrived, basically" and that he also "wanted [plaintiff] to make a statement that could be used in the form of his

admission or confession." 280 Or at 132. The court concluded:

> "From these facts it appears that defendant's security officers not only did not make a further investigation, but deliberately decided not to do so when plaintiff left the store. Although they then asked him if he had anything in his pocket that he had not paid for (to which he answered, 'No') the jury could properly find that they gave him no fair opportunity to explain his possession of the socket and were not interested in any such explanation." 280 Or at 132.

■ On the basis of the analysis in *Lambert,* we conclude that summary judgment should not have been granted. A reasonable person, we believe, would have given fair consideration to the possibility of a mistake and would have made further inquiries. A trier of fact could have found that Cope did not give fair, open-minded consideration to the possibility of a mistake, that further appropriate inquiry would have revealed exculpatory facts and that the institution of criminal proceedings[2] without such inquiries was malicious.

Although he had not yet placed any items in the shopping cart when he put the socket extension in his pocket, it can be reasonably inferred that plaintiff contemplated purchasing more items than he could easily carry. The socket was small. A trier of fact could have found both that it *apparently* would have fallen through the bottom of the cart and that it *actually* would have fallen through.[3] A store security officer

---

[2] The parties have raised no issue whether defendants' actions were sufficient to support a finding that they instituted criminal proceedings. We believe the evidence, viewed in the light most favorable to plaintiff, would have supported such a finding. *See Gustafson v. Payless Drug Stores,* 269 Or 354, 525 P2d 118 (1974).

[3] Cope twice tested the socket extension to see if it would stay in the bottom of the cart or fall through. One test was done with the police officer, the other prior to the shoplifting trial. Cope concluded that when it was in a vertical position, the extension would fall through the bottom. He noted, however, that it would not fall through the bottom of the area near the handle of the cart which was designed for carrying small children.

[281]

should be expected to appreciate the problem such small items may pose for the shopper using a cart. Plaintiff paid for $16.69 worth of merchandise. As those items were rung up, a question arose as to the price of one. The ensuing discussion could have distracted plaintiff and made him forget the socket extension. Cope admitted that plaintiff's initial remark in the parking lot, "Oh, yeah," suggested to him that defendant had just been reminded of an item. A trier of fact could have found that plaintiff explained he was a businessman, had money and had no reason to steal such an inexpensive item.

Nevertheless, Cope's mind was apparently set on either getting a confession, instituting a criminal proceeding or both. His own deposition indicates that he never fairly considered the possibility of a mistake and that he simply was not interested in any information that may have indicated plaintiff's failure to pay for the item was inadvertent. His testimony is set out in the margin.[4]

■ We recognize the seriousness of the shoplifting problem with which storekeepers are faced and the purpose to be served by prosecuting those who steal inexpensive items as well as expensive ones. But reasonable, open-minded inquiry, where the circumstances call for it, can result in saving of judicial resources, avoidance of individual embarrassment and avoidance of ill will. The storekeeper or security officer is not bound to believe explanations offered, but when the circumstances suggest a reasonable possibility of an innocent explanation for the failure to pay, the institution of criminal proceedings without the investigation required by *Lambert* cannot be held to be with "probable cause as a matter of law."

Reversed and remanded.

---

[4] "Q: *** [D]on't they tell you to find out the circumstances, to see if maybe a mistake was made?

"A: Okay. If there is doubt, yes.
"Q: In this particular case, you never even asked the man what happened, did you?
"A: No, I didn't.
"* * * * *
"Q: Did you ever check out the information that Mr. Hoefer was a businessman in the community?
"A: No.
"Q: Did you ever check out whether or not he had about a hundred dollars in cash on him?
"A: At the time, I believe he showed the officer some money the day I stopped him.
"Q: Did you ever take those facts into consideration?
"A: No.
"Q: Did you ever talk to the checkers there that he had been talking to, to see if they knew Mr. Hoefer?
"A: Yes, the one, Lillian Vilhauer.
"Q: You checked with her?
"A: No, she sort of checked with me, asked me what had happened.
"Q: Were you aware of the fact she knew Mr. Hoefer?
"A: At that time, after that when she contacted me.
"Q: Did you check with her to see if she could say anything about his honesty or knew his reputation to be good or bad?
"A: No."