Argued and submitted September 11, 1986, reversed and remanded on appeal and
affirmed on cross-appeal April 8, 1987

DOW,
*Respondent - Cross-Appellant,*

*v.*

SEARS, ROEBUCK & COMPANY,
*Appellant - Cross-Respondent.*

(A8210-06596; CA A35775)

734 P2d 1387

James H. Clarke, Portland, argued the cause for appellant - cross respondent. With him on the briefs were Robert E. Maloney, Jr., Lindsey H. Hughes, and Spears, Lubersky, Campbell, Bledsoe, Anderson & Young, Portland.

Michael R. Shinn, Portland, argued the cause for respondent - cross appellant. On the brief were Charles J. Merten, and Merten & Fink, Portland.

Before Joseph, Chief Judge, and Newman and Deits, Judges.

NEWMAN, J.

## NEWMAN, J.

Plaintiff brought an action for battery and for malicious initiation and continuation of prosecution arising out of an incident at defendant's store. At the close of the evidence, the court directed a verdict for defendant on the claim for malicious initiation of prosecution. The jury gave defendant a verdict on the claim for malicious continuation of prosecution, but it gave plaintiff a verdict on the claim for battery and an award of $40,000 general damages and $40,000 punitive damages.

Defendant appeals the judgment for battery and assigns as errors that the court (1) refused to instruct the jury that ORS 131.655 is a defense to battery;[1] (2) refused to withdraw the issue of punitive damages from the jury; and (3) excluded certain testimony that defendant offered and admitted certain testimony that plaintiff offered. Plaintiff cross-appeals, assigning as error that the court directed a verdict for defendant on the claim of malicious initiation of prosecution. On both the appeal and cross-appeal, we view the evidence in the light most favorable to plaintiff. *Jacobs v. Tidewater Barge*

---

[1] Defendant assigns as errors that the court refused to give these requested jury instructions:

Instruction IV:

"I instruct you that the law of the State of Oregon provides that a merchant such as Sears department store or a merchant's employer [sic] who has probable cause for believing that a person has committed theft of property of a store may detain and interrogate the person in regard thereto, in a reasonable manner and for a reasonable time."

Instruction VII:

"I further instruct you that if a store employee has probable cause to believe that a person has committed theft of property of a store and detains and interrogates the person concerning the act, such probable cause is a defense to any civil lawsuit based upon the detention and interrogation, if the detention and interrogation were done in a reasonable manner and for a reasonable time."

Instruction VIII:

"In determining whether the detention and interrogation was reasonable, you may consider whether the suspect was cooperative and whether he provided an explanation of his conduct."

The court refused to give Instruction VIII, because it believed that it was appropriate only if ORS 131.655 provides a defense in a civil action for battery. Defendant also assigns as error that the court refused to give that instruction on the issue of self-defense, even if ORS 131.655 does not provide that "probable cause" is a defense to battery. Because we hold that that statute does provide that defense and that the instruction should have been given, we do not decide whether it should have been given on the other ground.

*Lines,* 277 Or 809, 562 P2d 545 (1977); *Wells v. Home Purchasing Corp.,* 84 Or App 103, 733 P2d 898 (1987). On the appeal, we reverse and remand; on the cross-appeal, we affirm.

On September 3, 1981, plaintiff was shopping in the hardware department of defendant's store. He picked up an open packet of five wrenches that were in a bin marked with a price of $9.99. He inserted another wrench, marked with a price of $4.99, into the packet and closed it. He did not try to conceal his actions. Thereafter, plaintiff and a salesman who had joined him looked unsuccessfully for another item. Plaintiff then went to the cashier and placed the packet of wrenches on the counter, along with a separately priced basin wrench, which he also intended to purchase. Plaintiff asked the cashier for assistance in locating another item in the catalog and, after she had looked unsuccessfully for it, she began to ring up his purchases. She picked up the packet of wrenches to look for the price tag and plaintiff asked, "Part of these are on sale, aren't they?" The cashier replied that she knew that and charged him $9.99 for the packet of wrenches. The packet also contained the separately priced $4.99 wrench.

Two of defendant's security agents had observed plaintiff's actions. They checked the cash register tape and confirmed with the cashier that plaintiff had paid for only two items—the basin wrench and the $9.99 packet of wrenches. They followed plaintiff as he browsed briefly through another department and then left the store. A third security agent joined them outside. One of the security agents seized plaintiff's left shoulder and told him that he was "under arrest for theft." Plaintiff asked, "What are you talking about?" A security agent told plaintiff that the $4.99 wrench had not been paid for. Plaintiff responded that he thought that he had paid for it but that, if he had not, he would like to pay for it at that time.

A security agent then noticed that plaintiff was carrying a gun pouch on his belt. He immediately grabbed plaintiff's right arm to restrain him and asked him what was in the pouch. Plaintiff told him that it contained a gun but that he had a permit for it. The security agents handcuffed him and took him back inside the store to a small security room. There, they frisked him and asked him to explain why he took the wrench. He did not respond to their questions. The agents

removed the handcuffs and gave him a form to complete, which requested information about the incident.[2] He refused to complete the form. He called his attorney, who advised him not to say anything. He had been in the security office for approximately 30 minutes when a police officer arrived and gave him a citation for theft. He was then released.

On September 15, 1981, the head of defendant's security department initiated a criminal prosecution when he signed a criminal complaint against plaintiff. The district attorney dismissed the criminal complaint before trial.

ORS 131.655 provides:

"(1)   Notwithstanding any other provision of law, a peace officer, merchant or merchant's employe who has probable cause for believing that a person has committed theft of property of a store or other mercantile establishment may detain and interrogate the person in regard thereto in a reasonable manner and for a reasonable time.

"(2)   If a peace officer, merchant or merchant's employe, with probable cause for believing that a person has committed theft of property of a store or other mercantile establishment, detains and interrogates the person in regard thereto, and the person thereafter brings against the peace officer, merchant or merchant's employe any civil or criminal action based upon the detention and interrogation, such probable cause shall be a defense to the action, if the detention and interrogation were done in a reasonable manner and for a reasonable time."

Defendant's assignments of error that relate to the court's instructions each assume that ORS 131.655 provides a defense to a claim for battery. Plaintiff, on the other hand, argues that the statute does not provide a defense to battery here, because defendant's agents did not merely "detain and interrogate"

---

[2] The "Record of Interview" form requested this information:

"1. Please list the merchandise you have that has not been paid for.

"2. Give any explanation that you have for what happened.

"3. Did the Company representative act reasonably in requesting you to return with him to this office to discuss the matter?

"4. Has anyone promised you anything or threatened you in any way?

"5. What time is it now? How long has this interview taken?

"6. Have you anything to add?"

Plaintiff stated at trial that he refused to complete the form, because the first question led him to believe that it was requesting his confession.

him but arrested him when they stopped him outside the store.

■    A merchant who arrests a suspected shoplifter may assert the statutory defense, although the arrest may bear upon whether the defendant detained and interrogated the suspect in a reasonable manner or for a reasonable time. *See Delp v. Zapp's Stores,* 238 Or 538, 544, 395 P2d 137 (1964). Plaintiff also argues that the statute does not provide a defense to battery, because the 1971 amendments replaced the list of specific actions to which it provided a defense, including battery, with the phrase "any civil or criminal action based upon the detention and interrogation."[3] The amendments, however, did not restrict the actions to which the statute provides a defense. It continues to provide a defense to an action for battery based upon the detention and interrogation of a suspected shoplifter. *See Wolf v. Nordstrom,* 291 Or 828, 833, 637 P2d 1280 (1981). Accordingly, the court erred in failing to give the instructions that defendant requested.[4]

Defendant's fifth assignment is that the court erred

---

[3] The statute was originally enacted in 1959 as ORS 164.392. It then provided, in part:

"(2)  Where a peace officer, merchant or merchant's employe, with reasonable cause for believing that a person has committed the crime of shoplifting as defined under subsection 1 * * * detains and interrogates him in regard thereto, *and such person thereafter brings against the* peace officer, *merchant* or merchant's employe *a civil or criminal action for slander, false arrest, false imprisonment, assault, battery or wrongful detention based upon the detention and interrogation, such reasonable cause shall be a defense to the action if the detention and interrogation were done in a reasonable manner and for a reasonable time.*" (Emphasis supplied.)

In 1971, the statute was renumbered ORS 133.037 and amended to read much as it presently does. It was amended again in 1973 to substitute "probable cause" for reasonable cause. The Criminal Law Revision Commission gave the following reason for the 1971 amendment:

"This section is a modified version of ORS 164.392 which pertains to reasonable detention and interrogation of shoplifting suspects. Under the proposed comprehensive definition of theft, the separate crime of shoplifting would be repealed; however, *the Commission believes that the substance of ORS 164.392 should be retained.* The new section would allow detention and interrogation of persons suspected of committing either first or second degree theft, as those crimes are defined in §§ 124 and 125 supra. The Commission recommends that the section be added to and made a part of ORS 133.210 to 133.280 (arrests)." Commentary to Article III, § 289 (1971). (Emphasis supplied).

The statute was renumbered ORS 131.655 in 1975.

[4] Plaintiff argues that the requested instructions were abstract, confusing, incomplete and misleading. We disagree.

in refusing to withdraw the issue of punitive damages from the jury. Because we remand for a new trial, we do not decide whether the assignment has merit.

As to defendant's remaining assignments, the court did not abuse its discretion when it excluded defendant's expert's testimony that it was reasonable for defendant's employes to use handcuffs to restrain plaintiff or when it admitted testimony of plaintiff's witness, a nurse practitioner, that, in her opinion, the incident was a cause of plaintiff's stress.

On cross-appeal, plaintiff asserts that the court erred when it found that defendant had probable cause to *initiate* criminal proceedings against plaintiff and directed a verdict for defendant on plaintiff's claim for malicious initiation of prosecution. Plaintiff argues that, as a matter of law, defendant did not have probable cause and, alternatively, that there were disputed issues of material fact bearing on probable cause that should have been submitted to the jury.

■    Plaintiff concedes that defendant's employes had probable cause to believe that plaintiff had committed theft and to detain him outside the store to question him.[5] He asserts, however, that, under the circumstances, defendant had a duty to investigate further and, therefore, lacked probable cause *to initiate prosecution.* Probable cause is a question of law for the court. If there are disputed material facts bearing on probable cause, they are ordinarily submitted to the jury. *See Lambert v. Sears, Roebuck,* 280 Or 123, 128, 570 P2d 357 (1977); *Shoemaker v. Selnes,* 220 Or 573, 580, 349 P2d 473 (1960); *see also Fleet v. May Dept. Stores, Inc.,* 262 Or 592, 598 n 1, 500 P2d 1054 (1972).

■    Plaintiff argues that there were disputed material facts concerning whether (1) the price for the packet of wrenches was on the pouch itself or only on the bin in which it

---

[5] During closing arguments, plaintiff's counsel conceded that defendant's security agents had probable cause to stop plaintiff and question him regarding the apparent theft of the wrench:

"*[By plaintiff's counsel]: Before* [defendant's agents] arrested Mr. Dow, they just jumped to this big conclusion. But, even if they talked to [the cashier], the most these famous agents remembered asking her about was whether or not he had paid for the wrench. And he hadn't. So, certainly, they had a right to stop him in the parking lot and ask him about what had happened."

was found, (2) the 5/8" wrench was visible through the front of the pouch and (3) anyone other than plaintiff was in the tool area when he placed the wrench inside the packet. He argues that, if all the factual disputes are resolved in his favor, they, in combination with the undisputed facts, establish that defendant had a duty to investigate further. The undisputed facts include that (1) plaintiff made no furtive movements when he placed the 5/8" wrench in the pouch, (2) the front of the pouch was clear plastic and the 5/8" wrench had its own price tag on it, (3) the cashier picked up the pouch and examined it and could have seen the separately priced wrench, and (4) plaintiff asked the cashier, "Part of these are on sale, aren't they?" We assume that the court resolved all the disputed facts in plaintiff's favor. Even so, the court correctly decided that defendant had no duty to investigate further and had probable cause to initiate prosecution. *See Fleet v. May Dept. Stores, Inc., supra,* 262 Or at 598 n 1.

Plaintiff relies on *Lambert v. Sears, Roebuck, supra.* There, the plaintiff had returned to the defendant's store with a socket that he had purchased there earlier the same day. After he entered the hardware department, he took the socket out of his pocket and held it up to attract a salesman's attention. He asked the salesman where he could find a handle for it, and the salesman directed him to a display. He tried the socket and other sockets from the display on a bolt that he had with him. He put the socket back into his pocket and paid for other items at the checkstand. Before he left the store, he took everything out of his pocket, including the socket, to look for an item that he thought he had lost. The court concluded that those facts created "ambiguous circumstances" that "were such as to cause a reasonable person to investigate further, at least to the point of asking plaintiff for an explanation and giving him a fair opportunity to give such an explanation." 280 Or at 131. The court held that, because the defendant had given the plaintiff no fair opportunity to explain, it did not discharge its duty and, therefore, that it did not have probable cause to initiate prosecution:

> "In this case one of defendant's security officers testified that he 'made the decision that [he] was going to formally charge [plaintiff] with a crime * * * when [plaintiff] left the store with the merchandise' and that 'the purpose of the [subsequent] interrogation' was 'detention until the officers

arrived, basically' and that he also 'wanted [plaintiff] to make a statement that could be used in the form of an admission or confession.' This is consistent with plaintiff's testimony that he was 'cut off' when he tried to make an explanation for his possession of the socket.

"From these facts it appears that defendant's security officers not only did not make a further investigation, but deliberately decided not to do so when plaintiff left the store. Although they then asked him if he had anything in his pocket that he had not paid for (to which he answered, 'No') the jury could properly find that they gave him no fair opportunity to explain his possession of the socket and were not interested in any such explanation." 280 Or at 132.

Unlike in *Lambert,* plaintiff's conduct in defendant's store did not create ambiguous circumstances that suggested that he had mistakenly left the store without paying for the wrench. *See also Gustafson v. Payless Stores,* 269 Or 354, 525 P2d 118 (1974). Although he argues that his question to the cashier, "Part of these are on sale, aren't they?" should have indicated to her that he thought that he was paying for the separately priced 5/8" wrench that he had inserted in the packet, she had no reason to attach that significance to the question, because plaintiff was also purchasing a basin wrench that was not on sale.

Plaintiff does not contend that there is a factual dispute concerning whether defendant gave him an opportunity to explain his conduct. *See Lambert v. Sears, Roebuck, supra.* His explanation and the potentially exculpatory information it revealed were forthcoming only *after* defendant initiated prosecution.[6] The court did not err when it directed a verdict for defendant.

---

[6] After defendant had initiated prosecution, plaintiff told the district attorney that his question referred to the packet of wrenches and that, consequently, he had assumed that the question had alerted the cashier and that she had charged him for the $4.99 wrench which was inside the packet. Moreover, plaintiff's attorney provided defendant with substantial additional information by way of explanation of plaintiff's actions in the store. That information included that plaintiff had never before been arrested, that he had an "impeccable" employment record, that he had a disabling medical condition involving his elbow and that he had been instructed in a pain management program to carry objects in only one hand. The latter point tended to explain why he had inserted the $4.99 wrench in the packet. The jury heard evidence that plaintiff had provided those explanations to defendant after it had initiated criminal prosecution but, nonetheless, its verdict was that defendant had not maliciously *continued* the criminal prosecution. Plaintiff has not challenged that verdict.

Reversed and remanded on appeal; affirmed on cross-appeal.